FIRST NAT. BANK OF SALEM *v.* SALEM CAPITAL FLOUR-MILLS CO. and others.

*(Circuit Court, D. Oregon.* August 1, 1887.)

*(Circuit Court, D. Oregon.* July 27, 1887.)

1. CIRCUIT COURT—JURISDICTION—CITIZENSHIP—CROSS-BILL.
   An original bill and a cross-bill thereto constitute but one cause, and, when a circuit court has jurisdiction of the former by reason of the citizenship of the parties thereto, it has jurisdiction of the latter without reference to such citizenship.

2. MORTGAGE—FORECLOSURE—CROSS-BILL OF PRIOR MORTGAGEE.
   In a suit to foreclose a mortgage, a prior mortgagee is a proper party defendant; and when so made a party, he has a right to file and maintain a cross-bill for the purpose of having the lien of his mortgage enforced and procuring a determination of any question concerning its priority or validity that can arise and be litigated between himself and any or all of the parties to the original bill.

*(Syllabus by the Court.)*

Suit in Equity to Enforce the Lien of a Mortgage.

*William H. Gilbert,* for plaintiff.

*John M. Bower,* for defendants Kelly and McDonald.

DEADY, J. This suit is brought by the First National Bank of Salem, against the Salem Capital Flour-Mills Company, William Stuart, R. McDonald, and Joseph F. Kelly, to enforce the lien of a mortgage given to the plaintiff by said flour-mills company, on certain real property in and about Salem, Marion county, Oregon, on November 17, 1886, to secure payment of the note of said flour-mills company, of the same date, for the sum of $30,000, and payable to the order of the plaintiff one day after date, with interest at 10 per centum per annum, on which note there is due the plaintiff, since March 11, 1887, the sum of $28,-254.91.

It is alleged in the bill of complaint, that the plaintiff is a citizen of Oregon, and the defendants the flour-mills company, William Stuart, and R. McDonald are British subjects, and Joseph F. Kelly is a citi-

zen of Rhode Island, commorant in England; that the defendant Stuart has a mortgage on the same property, executed on August 2, 1883, to secure the payment of $71,940, with interest thereon from date, no part of which has been paid, which mortgage also covers certain real property in Polk county, not included in the plaintiff's mortgage; that the defendants McDonald and Kelly pretend to have an interest in said property by reason of certain judgments heretofore obtained in the state circuit court for the county of Multnomah, and are trying to enforce the same as a lien on said property by a suit commenced in the state circuit court for the county of Marion, which suit has been removed into this court; but the lien of said judgments, if any, is subsequent and subordinate to that of the plaintiff.

On April 14, 1887, the defendant Stuart filed an amended cross-bill against the plaintiff and his co-defendants in the original bill, in which the citizenship of the parties is stated as in the original bill; and it is alleged that on and before August 2, 1883, the City of Salem Company was, and still is, an Oregon corporation; and about that date borrowed from this defendant the sum of $71,940, to secure the payment of which to the order of said defendant at London, on August 1, 1888, with interest at 9 per cent. per annum, payable semi-annually, according to the tenor and effect of certain promissory notes for the principal and interest of said loan, it gave him a mortgage on certain real property situate in Polk county, and also one on all the property included in the mortgage to the plaintiff, except a tract containing five acres, more or less, but which was intended to have been included therein, and which was, in consideration of the premises, on February —, 1887, mortgaged to the defendant by the Salem Capital Flour-Mills Company, the successor in interest of said City of Salem Company, as a security for said loan; that on or about June 1, 1884, the City of Salem Company duly sold and conveyed to said flour-mills company all of said mortgaged property subject to the mortgages of this defendant, and that on or about November 17, 1886, said flour-mills company executed the mortgage to the plaintiff on which it brings this suit; that it is provided in said mortgages that if any of said interest notes were not paid when due this defendant might at once foreclose said mortgages for the whole of said debt and interest, and that he still owns said notes and mortgages, on which nothing has been paid; and that by the terms of said mortgages the mortgagor and its assigns, during the continuance of said loan, were to keep the improvements on the premises insured against loss by fire in the sum of not less that $40,000, for the benefit of the mortgagee, and that, on failure thereof, the defendant might so insure the same, and the amount of the premiums so paid by him should be a lien on the property and be repaid with interest, in pursuance of which provision the defendant paid out prior to January 1, 1887, the sum of $1,819.56.

It is further alleged in the cross-bill that the defendants Kelly and McDonald pretend to have an interest in said mortgaged property by reason of certain judgments in their favor against the City of Salem Company as in the original bill stated; that said judgments were obtained

on promissory notes made by said company to the Oregon & Washington Mortgage Savings Bank, and transferred by it to said defendants respectively; that said Kelly and McDonald claim that the defendant's mortgages are fraudulent and void, as to them, because the company was insolvent at the date thereof, and the debts on which their judgments were obtained existed prior thereto, and that said mortgages were not made to secure a loan of money, but to secure the payment to this defendant from the City of Salem Company for shares of stock therein, then sold by the former to the latter; that said Kelly and McDonald commenced suit in the state circuit court for Marion county against this defendant, "assailing said mortgages on said grounds," which has since been removed to this court.

It is also alleged that said Kelly and McDonald are estopped to say that said mortgages are void as to them, or were made to secure the payment of money for stock in said company, sold by this defendant thereto, because said notes were transferred to them after maturity, and for no consideration or purpose other than to obtain judgments thereon in their names, for the benefit of said mortgage savings bank; that although the money loaned by this defendant to said company was used by it to pay for shares of its stock then owned by sundry persons, it was in fact a loan by him to said company at the urgent request of its stockholders, and especially of William Reid, the then president of said company and of the mortgage savings bank, whose personal dissensions and differences with said persons made it necessary to purchase their stock or allow the company to become dissolved; that said Reid was the chief promoter of the arrangement by which said company borrowed this money of the defendant and purchased said shares of stock, and as president thereof executed the notes and mortgages therefor to the defendant,—he being at the same time president of said mortgage savings bank, and a large stockholder therein,—whereby said bank had knowledge of the facts and circumstances of the transaction, and assented to the same; that the officers of said bank assert that McDonald resides in London, but, so far as this defendant is informed, he believes that he is a fictitious person, and that whatever claim either he or Kelly may have against said mortgaged property it is subsequent and subject to the lien of the defendant's mortgages. Wherefore the defendant prays that the lien of his mortgages may be enforced in this suit, and that on the sale of the property the proceeds thereof, after paying the costs and expenses of the suit, may be first applied to the payment of the defendant's demand, and the remainder as the court may decree.

The defendants Kelly and McDonald demur to the cross-bill for that (1) "the court has no jurisdiction of the persons and matters" set forth therein; and (2) it does not appear therefrom that this defendant is entitled to any relief as against either of said defendants.

In a brief, in support of this demurrer, counsel makes a number of points that are not very germane to the causes of demurrer assigned therein. And, first, it is said that the cross-bill not only seeks to enforce the lien of the Stuart mortgages, one of which includes land not

mentioned in the original bill,—the Polk county property,—but also to correct a "mistake" in the prior one against "a person not a party to the suit." But the "mistake" is one made by counsel. The cross-bill does not ask to have any "mistake" corrected in either of the Stuart mortgages. It simply states that certain property was unintentionally omitted from the first one by the City of Salem Company, which "mistake" was corrected by its successor in interest—the flour-mills company,— in the execution of the second mortgage. The manifest and only purpose in making the statement is to show the cause and consideration of such mortgage, which otherwise does not appear.

Counsel is also "mistaken" in the statement that the mortgage of the Polk county property is not mentioned in the original bill. The fact of such mortgage is plainly stated, and the bill prays that in case the Stuart mortgages are foreclosed in this suit, that the decree may direct the sale of the Polk county property, and the application of the proceeds on his demand, before the sale of the property covered by the plaintiff's mortgage.

An objection is also made that Stuart is not a necessary party to the suit, but only a proper one. Admit this, and what follows? Nothing. The plaintiff had a right to make him a party, and thereby secure a sale of the property clear of this incumbrance, and the probable cost and expense of another suit to enforce the lien thereof. Indeed in *Finley* v. *United States Bank*, 11 Wheat. 304, Mr. Chief Justice MARSHALL says that, in a suit to foreclose a mortgage, a prior incumbrancer ought regularly to be made a party.

But, defendant being properly made a party, Stuart has the same right to file and maintain a cross-bill in the suit as if he was a necessary or indispensable party thereto. An attempt is also made to show that this cross-bill cannot be maintained on account of the citizenship of the parties thereto, because it makes a case or states a controversy between Stuart on the one hand and McDonald and the flour mills company on the other, all of whom are British subjects.

Now, nothing is better settled, both on reason and authority, than this. In suits not original but ancillary to litigation already pending in a circuit court of the United States, the citizenship of the parties is wholly immaterial. *Shields* v. *Barrow*, 17 How. 130; *Freeman* v. *Howe*, 24 How. 460; *Cross* v. *De Valle*, 1 Wall. 14; *Railroad Cos.* v. *Chamberlain*, 6 Wall. 748.

In the last case the court reversed the decree of the circuit court dismissing the cross-bill on the final hearing, because the parties thereto were citizens of the same state; saying that the cross-bill "was but ancillary to, and dependent upon, the original suit," and, by a necessary implication, that the citizenship of the parties in this connection was immaterial. If the citizenship of the parties in the original suit is sufficient to give the court jurisdiction, it has jurisdiction of the cross-bill therein without reference to the citizenship of the parties thereto. A cross-bill is a proper and recognized means of making a defense or asserting the right of a defendant in a suit in equity. It would be intolera-

ble if a party, sued in a national court, was thereby deprived of this right, unless the parties to the cross-bill were such as to give the court jurisdiction in an original suit. In short, the cross-bill and the original suit are but one cause, and jurisdiction of the latter includes the former. *Field* v. *Schieffelin*, 7 Johns. Ch. 252; Story, Eq. Pl. § 399.

The point is also made in support of the demurrer that it appears from the cross-bill there is another suit pending in this court between the parties thereto. But it does not appear therefrom that the objects of the suits or the controversies involved therein are the same. It only appears that Kelly and McDonald are plaintiffs in another suit in which Stuart's mortgages are alleged to be fraudulent and void as to them. But whether there are other parties to such suit, or whether Stuart can or is endeavoring to enforce the lien of his mortgage therein, or is only standing on the defensive, does not appear. Besides, Stuart did not bring this suit, and is not responsible for the pendency of it. He is a mere defendant in it, and so long as it is maintained he is entitled, without reference to the pendency of any other suit, to avail himself of the opportunities it affords or allows to assert and enforce his rights in and to the subject-matter thereof.

And, whether the alleged lien of Kelly and McDonald's judgments are superior or subject to Stuart's mortgages, they are proper parties to the cross-bill, because Stuart has a right thereby to have all the questions concerning the validity and priority of his mortgages arising between himself and any of the parties to this suit determined herein. On what ground it is claimed that these judgments, which are long subsequent in date, are prior in law to Stuart's mortgages is not stated in the argument. But, from the statement of the pretenses in that particular in the bill and cross-bill, it appears that Kelly and McDonald claim that the demand which Stuart's mortgages were given to secure, arises from the sale of his stock to the corporation when the latter was insolvent, and the debts on which the judgments were obtained had been incurred. Neither party has submitted any argument on the point. The demurrer admits the facts as they are alleged to be in the cross-bill, and not as the defendants Kelly and McDonald claim or pretend they are, namely, that Stuart loaned the money to the corporation to enable it to purchase the stock of its dissatisfied shareholders. It is not necessary in the present state of the case to say anything more on this point.

It is also objected to the cross-bill that it is not germane to the original bill or suit. A cross-bill is defined by Story (Eq. Pl. § 389) as "a bill brought by a defendant in a suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill;" and he adds: It "is usually brought, either (1) to obtain a necessary discovery of facts in aid of the defense to the original bill, or (2) to obtain full relief to all parties touching the matters of the original bill." That this is a proper case for a cross-bill within this definition, and within the reason of the thing, is too plain for argument.

As to the estoppel set up in the cross-bill, my impression is that it is sufficient if the mortgage savings bank is bound by the knowledge of

its president and manager, William Reid, obtained while acting as president of the City of Salem Company, and engaged in the transaction of this business. But the question has not been argued under the demurrer, and it may go over until the coming in of the answer to the cross-bill or the final hearing.

The demurrer is overruled.