## HENRY E. HAWK, GEORGE LOMMASSON AND GEORGE CREVELING v. JOHN GEORGE LEPPLE.

A defendant whose goods are seized by an officer in obedience to the command of legal process cannot, under any circumstances, maintain replevin against such officer for the goods so taken into legal custody.

In replevin.    On demurrer to replication.

Argued at November Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and GARRISON.

For the demurrants, *John I. B. Reiley.*

For the respondent, *John F. Dumont.*

The opinion of the court was delivered by

KNAPP, J.    Lepple brought replevin against Lommasson, Creveling and Hawk for certain goods and chattels as his property.    To the declaration filed the defendants, Lommasson, as sheriff, and Creveling, as deputy, avowed the taking of the goods, and set forth in their pleading, in justification of the taking charged in the declaration, the seizure of the goods under and by virtue of a writ of foreign attachment regularly issued out of the Circuit Court of the county of Warren, at

the suit of said Hawk, against the said Lepple as a non-resident debtor; that the goods were the goods of the said debtor, and that when the writ of replevin was executed the said goods were in the custody of the said Lommasson, as sheriff, in virtue of their seizure under said writ, as the goods and chattels of Lepple, the defendant in attachment. To this the plaintiff pleads in reply that both Hawk and himself, the plaintiff and defendant in the attachment, were, at the time the writ was issued and when the goods were seized under it, residents of the State of Pennsylvania; that by the statutes of that state, goods of a debtor to the value of $300 were exempt from seizure for debt; that the goods attached by the sheriff under the writ were of less value than $300, and that as he owned no other property, they were exempt, within the meaning of the twelfth section of our Attachment act, and were therefore not liable to be seized under the writ of attachment which the officer held in his hands for execution, and under which the seizure was justified. To this pleading of the plaintiff, in reply the defendants demur, and the question is, whether this is a sufficient answer to the undisputed averments pleaded by the defendants.

Whatever diversity of view has elsewhere existed regarding the right to use the writ of replevin to retake goods from the custody of an officer who holds them under seizure by legal process, it may be regarded as settled in this state, that the fact that such goods are in the custody of an officer holding process of seizure will not, in law, preclude a stranger to the process from the use of the writ of replevin to assert against the officer of the law the title of such third person to the property taken; accordingly it has been held, that to an action of replevin it is not a sufficient avowry by the defendant that the goods were seized by him as an officer, under process of execution, as the property of the plaintiff in replevin, without the further averment of *title, at the time of the seizure, in the plaintiff.* *Bruen* v. *Ogden,* 6 *Halst.* 370; *Brown* v. *Bissett,* 1 *Zab.* 267.

An execution in the hands of an officer commanding a levy

to be made of the goods of A, in its satisfaction, will not permit such officer to seize the goods of B, and against such levy B may assert his title through the action of replevin. Such goods are not taken by the command of the writ; their seizure is wholly a trespass, and it would seem like a sanction of the wrongful act to consider such · goods as being in the custody of the law.

For this rule there is to be found ancient authority in England. In *Winnard* v. *Foster*, 2 *Lutw.* 1190, a third person, not the defendant in the process of seizure, was permitted to maintain replevin against the sheriff's bailiff.

A full discussion of this question will be found in *Bruen* v. *Ogden, supra.*

But the narrower question here is, whether a defendant, whose goods are seized by an officer in obedience to the command of legal process, can, under any circumstances, maintain a replevin against such officer for the goods so taken into legal custody.

In this state, by statute, the action of replevin lies for the unlawful taking or the unlawful detention of goods, and generally, whenever the action of trespass *de bonis asportatis*, or the action of trover, may be maintained, replevin is a concurrent remedy.

But this general rule applies to the *unlawful* taking or detention, and not to such goods as are, through proper process, drawn into the custody of the law.

Goods taken in execution are in the custody of the law *Co. Litt.* 47 *a.*

In 6 *Com. Dig., tit. "Replevin," A,* it is said that replevin lies for all goods and chattels unlawfully taken. But it is also said that replevin does not lie for goods taken in execution. The principle embraced in this latter statement has been given a wider application in some of the courts in this country than has been accepted here, and the right of a third person to replevy his goods so taken unequivocally denied.

The case of *Cromwell* v. *Owengs*, 7 *Harr. & J.* 55, is such an instance, where it was held that replevin would not lie

even at the instance of a third person whose goods had been improperly seized in virtue of an execution against the defendant.

But in other states, as in this, authority is found only for the narrower application of the rule to defendants in the process of seizure.

At the common law it has been regarded as a contempt of the court issuing an execution to replevy the property taken under such execution. 1 *Chitty* 160; *Philips* v. *Harris*, 3 *J. J. Marsh.* 123.

Chitty says no replevin lies for goods taken by the sheriff by virtue of the execution. If any person should pretend to take out a replevin the court would commit him for a contempt.

In Philips *v.* Harris, it is said that the defendant in the execution cannot successfully maintain an action of replevin against the officer making the levy. The institution of the action by the defendant in the execution would be a contempt of the authority of the court rendering the judgment upon which the execution issued, and ought to be punished as such. If the defendant in the execution, after judgment had been legally entered against him, upon a full and fair trial, were tolerated in bringing his action of replevin, and by it to replevy goods taken in execution, there might be no end to the delays which a defendant might thus create; justice and the end of the law would be effectually subdued.

In *Reynolds* v. *Sallee*, 2 *B. Mon.* 18, a case closely resembling this in hand, Reynolds sued out a writ of replevin against Sallee for a horse. The latter avowed that he was a constable, and had levied executions which were in his hands against Reynolds on the horse; the plaintiff pleaded that this horse was his only work beast and not subject to levy. To this the defendant demurred. The court sustained the demurrer, on the ground that a defendant in execution could not maintain replevin for the property levied on under the execution; that such a proceeding would be a contempt to the court issuing the execution.

To the same effect is the case of *Dearmon* v. *Blackburn*, 1 *Sneed* 390. Corn was taken by replevin as the plaintiff's share under a contract of letting. The property was taken back by replevin sued out by defendant in the first suit. The defendant officer in the second suit justified under his writ. Plaintiff replied that it was not lawful to take growing corn, and further, that replevin would not lie for " rent corn " not delivered, because until gathered and delivered the lessor had no property in it. The court, in reviewing the judgment gained by the plaintiff at the trial, reversed it, holding that the matter set up by the plaintiff was immaterial and no answer to the justification under process; that they were matters proper to be litigated only in the first suit.

In the treatise on replevin by Chief Baron Gilbert, it is said, " If a Superior Court award execution it seems that no replevin will lie for goods taken by the sheriff *by virtue of the execution*, and if any person shall pretend to take out replevin and execute it, a court of justice would commit him for contempt of their jurisdiction, because by every execution the goods are in the custody of the law, and the law ought to guard them, and it would be troubling the execution awarded if the party of whom the money had to be levied should fetch back the goods to be replevied. And therefore they construe such endeavors to be a contempt of their jurisdiction and, upon that account, commit the offender. That is, if a person attempt to defeat the execution of the court they will treat it as a contempt and punish it by attachment of the sheriff."

The cases which hold, as in this state, that replevin will lie at the instance of a third person, distinguished, and quite properly, as I think, between the seizure of the goods of the defendant and of a third person, the former being regarded as *done in virtue* of the execution; caption of the goods of a stranger being not in virtue of the execution and a trespass.

The case of *George* v. *Chambers*, 11 *Mees. & W.* 148, presents no exception to the general rule as here applied; for while the plaintiff in that case was permitted to maintain his action

of replevin for goods of his that had been seized ostensibly to pay costs imposed by a magistrate, it was held that the defendant's plea showed that the proceeding of the magistrate in imposing the fine was entirely beyond his jurisdiction, and void. In that case the citation from Gilbert just given was accepted as a correct statement of the law.

The case of *Brown* v. *Bissett,* 1 *Zab.* 267, in our own state, has been cited, not as a direct decision upon the point here involved, for I think no decision is found with us upon the subject. Mr. Justice Carpenter, in that case, criticised the expression as found in the cases, that "the action of replevin *would not lie*" at the instance of the person whose goods had been seized by an officer with suitable process; and he suggests two pleas which such a plaintiff in replevin might lawfully present in answer to the avowry of the officer of an authorized seizure of the plaintiff's goods under legal process. But these pleas are, first, "*nul tiel record,*" and, second, a denial of the fact of seizure. The learned judge would have been more content to say that the action may be brought, but as against such a pleading in defence, presented by the officer unchallenged by denial, the right of the plaintiff *further to maintain* his suit ceases. But with this or a like formulation of the rule the right to attach for contempt in suing out replevin would seem to be inconsistent. It is certain, however, that the learned judge gave no countenance to such a plea as the plaintiff has presented in this case, for he says, in the opinion read by him, that "it has generally been held that replevin will not lie for goods taken in execution, and by a misapprehension of this rule it has been thought to extend to the case of a third person not the defendant in the process whose goods have been wrongfully seized. * * * Yet the reason of the rule applies only to replevin when brought by the defendant in execution;" and further, in alluding to the argument of Mr. Williams, in *George* v. *Chambers, supra,* he approves the position there taken, "that replevin is said not to lie at the instance of the execution defendant, because the judgment and execution *under which the defendant justifies are conclusive.*"

The established existence of this principle of the common law, determining the rights of the defendant in the writ of seizure, cannot be regarded as a subject of doubt. This the cases already referred to and those presently cited from a large body of authorities clearly show. *Watkins* v. *Page,* 2 *Wis.* 92; *Raiford* v. *Hyde,* 36 *Ga.* 93; *Freeman* v. *Howe,* 24 *How.* 450; *Gardner* v. *Campbell,* 15 *Johns.* 401; *Melcher* v. *Lamprey,* 20 *N. H.* 403; *Wiler* v. *Manley,* 51 *Ind.* 169.

That the rule is applicable to seizures of personalty made under every form of legal process appears to be equally clear. *Smith* v. *Huntington,* 3 *N. H.* 76; *Freeman* v. *Howe, supra;* *Wiler* v. *Manly, supra;* *Belden* v. *Laing,* 8 *Mich.* 500.

The right to maintain the action, or plead as the plaintiff in replevin in this case has pleaded, in case of seizure under attachment, would exist with equal force in favor of an execution debtor, and it is needless to point out the inconvenience, confusion, delay and defeat of justice which would ensue were such a course of practice permissible.

Here exists a suit in attachment *against the plaintiff in this cause;* property of his is found in the state by the sheriff executing the process of attachment, and upon that, as an essential jurisdictional fact, that proceeding must rest as one of its bases. The proceedings of the court out of which the attachment issued are arrested; the determination of the question whether attachable property exists or not is withdrawn from that forum, and its solution is to be had only upon the final trial of the new suit instituted by the defendant *in attachment,* in which creditors in attachment have no standing to be heard. Such a course is unreasonable and must be vexatious. Under our law personal property to certain values is reserved to debtors against seizure and sale. The statutes carefully point the manner in which the reserved property shall be selected for the defendant after levy and delivered to him. But this mode of selection is not to the exclusion of any other remedy which the common law affords the defendant, and if the pleading here contended for is the legal right of the party, no reason exists why a defendant in execution

may not, upon the same principle, sue out his replevin imme-
diately after his goods are levied upon by execution to satisfy
the debt adjudged against him, or at once sue the sheriff in
trespass. That the latter is not his right was long since
decided in our Court of Errors. *Bonnel* v. *Dunn,* 5 *Dutcher*
435.

Nor do I think he has better legal title to the other. If
the defendant in attachment considered himself aggrieved, he
was not without appropriate remedy for the wrong. Without
a doubt we think he had redress before the court in the
attachment suit.

Proceeding by attachment in this state rests upon the exist-
ence of three jurisdictional facts: a debt due to the party
purchasing the writ; the non-residence of the defendant, and
attachable property of the defendant within the state, the
latter condition being equally essential with the others. Now,
it was competent for the defendant in that suit to show to the
court that no attachable property was within the state. The
court out of which the writ issued had full power to try this
question, and to quash the writ if the fact did not exist. But he
was not shut up to this remedy ; he had as well the right to
bring his action against the wrong-doer for compensation in
damages if he had suffered legal injury.

But replevin was not, as we think, his appropriate remedy,
or one which, under the disclosures made by his reply to the
defendants' defense, the law afforded him. He makes no
denial of the existence of a record which the defendants appeal
to in their justification, nor of the truth of the proceedings
taken under the attachment by the sheriff, and as against the
right to hold the goods thus set up the special circumstances
which the plaintiff avers afford no legal answer, nor do they
lay any ground which can justify a replevy of the goods from
the custody in which the sheriff held them.

The defence set up under the attachment uncontradicted is
conclusive against the plaintiff in replevin, and judgment
should be given for the demurrants.