## LANT v. MANLEY et al.

### (Circuit Court, E. D. Michigan. July 29, 1895.)

### No. 3,387.

1. FEDERAL COURTS—JURISDICTION—PROPERTY IN CUSTODY OF STATE COURT.

A bill calling upon the federal court to dispossess administrators of a decedent of all control over the property committed to their charge, and to assume the administration and distribution of the property, and praying the appointment of a receiver, and a transfer to the court of all title deeds, securities, and papers of every kind belonging to decedent, and an injunction against all interference by the administrators with said estate, is demurrable as seeking to interfere with property in the custody of the state probate court.

2. SAME.

Property in possession of administrators appointed by the county probate court cannot be levied on under an attachment issued by a federal court.

3. FRAUDULENT CONVEYANCES—LACHES.

A bill filed in 1894 by the holder of a judgment against a decedent to obtain a discovery of decedent's assets, and to obtain relief from alleged frauds by which decedent put his property out of the reach of creditors, showed that the judgment was recovered in 1881, when the six-year period of limitations had nearly run against the cause of action, and that no effort to collect it was made until 1891, when an attachment was levied on property alleged to have been fraudulently conveyed by decedent. It appeared that the alleged fraudulent conveyances by decedent were made in 1874 and 1875, and that they were recorded within two years thereafter. *Held,* that complainant was guilty of laches.

4. SAME—DECEASED GRANTOR.

2 How. Ann. St. Mich. § 5884, provides that the executor or administrator shall prosecute suits to set aside any conveyances made by decedent to defraud his creditors, provided creditors request the bringing of such suit. *Held,* that a bill by creditors of decedent to set aside conveyances made by him should aver that the executor or administrator has been requested to institute such suit.

5. SAME.

Where matters complained of as frauds are evidenced by public records accessible to all, one seeking relief therefrom cannot excuse his delay by alleging ignorance thereof, unless he shows some affirmative act of deception, or some misleading device on the part of the party charged with fraud, intended to exclude suspicion, and to prevent inquiry and the institution of adequate measures of redress.

The complainant in this cause is a citizen of the state of Indiana, and the defendants are all citizens of the state of Michigan. Defendant Charles H. Manley is administrator of Elijah W. Morgan, deceased. Defendants Kinne and Johnson are the surviving executors and trustees of the last will and testament of Lucy W. S. Morgan, deceased; and defendant Lucy D. S. Parker is sued individually and as administratrix of the last will and testament of her deceased husband, Franklin L. Parker.

The facts upon which relief is sought by the bill, which is professedly filed as well for the complainant as all other creditors of Elijah W. Morgan, deceased, late of Washtenaw county, Mich., who will come in and contribute to the expenses of this suit, are as follows:

On the 20th day of November, A. D. 1873, said Elijah W. Morgan executed and delivered to Hattie C. Eames his three promissory notes, copies of which are annexed to the bill as exhibits, two of which are for the sum of $1,000, with interest at 10 per cent., payable 18 months after date, and the third for the sum of $1,333, payable, with like interest, 18 months after date. These notes were all indorsed on the 16th of September, 1876, by the payee, to George Lant, Sr., the complainant, for a valuable consideration, as is claimed by the bill. Suit was brought upon these notes by Lant in the circuit court for the county of Washtenaw, in which, on the 12th day of July, 1881, Lant recovered judgment against Morgan for the sum of $5,-882.72, damages, and costs. On the 2d day of February, 1891, an action of assumpsit was brought in this court upon said judgment recovered in Washtenaw county, and in this action a writ of attachment was taken out and delivered to the marshal of this district, against the lands, tenements, goods, chattels, moneys, and effects of Elijah W. Morgan, not exempt from execution. On the 13th day of February, 1891, the marshal levied the writ of attachment upon certain pieces or parcels of land in the county of Washtenaw, in this district, which the bill avers "then were, and still are, in the possession of said defendants Kinne, Johnson, and Parker, and Franklin L. Parker, or some of them, as is hereafter specified." The summons issued in the cause was served upon Morgan, as appears from the return of the marshal on file. The averment of the bill is that the lands attached then were and now are of the value of $2,000, and upward. Morgan appeared in this action by attorney, and filed a plea of the general issue to the plaintiff's declaration. On the 28th of January, 1892, Morgan died, intestate, leaving Lucy C. Eames, of Kalamazoo, in the Western district of Michigan, his heir at law. On the 20th day of December, 1892, letters of administration upon the estate of Morgan were duly issued out of the probate court for the county of Washtenaw, in the Eastern district of Michigan, to defendant Charles H. Manley, who, on the 3d day of February, 1893, in obedience to a writ of scire facias issued at the instance of Lant, and the suggestion upon the records of this court of the death of Morgan, Charles H. Manley, administrator of Morgan, appeared in the cause in this court by his attorney; and on the 10th of February, 1893, an order was made in this court reviving the cause herein against said Manley as such administrator of Morgan. The bill avers that Manley thereafter seasonably caused to be served upon the defendants Johnson and Kinne, and upon Franklin L, Parker, now deceased, notice in writing of the pendency of the suit brought by complainant against Morgan, and after his death revived, as aforesaid, against Manley, as administrator; and that Manley then offered to interpose any defense to said action which the parties notified might desire. June 2, 1893, complainant recovered judgment in said cause against Manley, as administrator of Morgan, for the sum of $8,702.20, damages, and costs, and was awarded execution therefor against the lands, tenements, goods, and chattels of the estate of said Elijah W. Morgan, deceased. Upon this judgment a writ of fieri facias was issued, and delivered to the marshal of this district, commanding him to make said sum of $8,702.20 out of the lands, tenements, goods, and chattels of the said Morgan. This writ was returnable August 25, 1893. September 8, 1893, the marshal made a return of nulla bona on said writ. On the 21st of February, 1894, complainant caused an alias writ of fieri facias to be issued on the judgment, returnable April 2, 1894. This writ was levied upon the lands and tenements upon which the writ of attachment issued at the institution of the suit in this court had been levied. The title of record of the lands levied upon under this alias writ was then in the defendants, as executors of Lucy W. S. Morgan and Franklin L. Parker.

Lucy W. S. Morgan, the wife of Elijah W. Morgan, died May 12, 1887, leaving her last will and testament, whereby defendants Johnson and Kinne and Franklin L. Parker, now deceased, were appointed executors and trustees, and to them were devised and bequeathed all her estate, for the purposes specified in her will. This will was probated June 20, 1887, by the decree of the probate court of the county of Washtenaw, and letters testamentary thereunder were granted to Parker, Kinne, and Johnson, the executors named in the will, who duly qualified and entered

upon the execution of their trust. Defendants Johnson and Kinne are still acting as such executors and trustees. Franklin L. Parker, the third executor, died on the 20th of February, 1894, leaving a last will and testament. whereby he devised and bequeathed all of his estate, real and personal, and the proceeds thereof, to his wife, defendant Lucy D. S. Parker, in trust for the purposes specified in his will, and appointed her sole executrix thereof. Parker's will was on the 26th of March, 1894, duly admitted to probate by the probate court for the county of Washtenaw: and the administration of his estate was granted to Lucy D. S. Parker, who qualified as executrix, and entered upon execution of her duties as such, and still is in the administration thereof.

The bill alleges complainant has reason to believe, and does believe, and so charges the fact to be, that the estate of Elijah W. Morgan has property, deeds, and other equitable things in action, or effects, of the value of more than $2,000, exclusive of all prior just claims thereon, which complainant has been unable to reach by execution on his said judgment against Morgan and his estate; denies collusion with either of defendants or any other person; and avers that the bill is brought solely for the purpose of compelling payment and satisfaction of the judgment recovered against defendant Manley, as administrator of Morgan, and for the benefit of such other creditors as may be entitled to share; that defendants have possession of personal property belonging to the estate of Elijah W. Morgan, or in which that estate is in some manner beneficially interested; and alleges that defendants hold personal property, judgments, mortgages, deeds, and choses in action, etc., in trust for the benefit of the estate of Morgan, and also that defendants hold in like trust real estate in this or some other state or territory, or chattels real, contracts relating to real estate, stocks, etc., of which it prays a discovery, and of the purpose for which the same are held, the amount, kind, value, and particulars thereof, and the terms and conditions on which the same are held. The bill then sets forth descriptions of pieces or parcels of land situated in Washtenaw county, of which, on information and belief, it charges that Elijah W. Morgan was seised and possessed on the 20th of November, 1873, stating their value to be upward of $2,000; and that defendants Johnson and Kinne, as surviving executors of the last will and testament of Lucy W. S. Morgan, deceased, claim to be the owners, and whereof they are and have been in possession under such claim, by virtue of sales and conveyances from Elijah W. Morgan to Lucy W. S. Morgan. These conveyances, it is charged on information and belief, were merely colorable, and made with a view of protecting the property and effects of the grantor from the claim of complainant and other creditors of said Morgan, and to enable him to control and enjoy the same and the avails thereof; and the bill prays a discovery of the amount and value of the lands so conveyed, terms and conditions of such conveyances, and the disposition made of the avails thereof. Like charges are made by the bill relative to the conveyance by Morgan of other lands situated in the city of Ann Arbor, the value whereof is stated to be upwards of $2,000. which are now in the possession of defendant Lucy W. S. Parker, executrix of the last will and testament of Franklin L. Parker, deceased, who claims to be the owner thereof as such executrix; that said Franklin L. Parker was in possession of said lands from the death of Morgan until his own decease, claiming under deeds from Morgan, which are alleged to be merely colorable, and made to protect the property and effects of Morgan against the claims of the complainant and other creditors. Other lands described in the bill are, upon information and belief, alleged to have been conveyed to defendant Lucy D. S. Parker, who claims and has been in possession thereof, under claim of ownership, since the death of Elijah W. Morgan. These conveyances, the bill charges, were of the same nature as those made to Lucy W. S. Morgan and Franklin L. Parker, and for the same purpose, and a discovery is also prayed of the tenure and trusts under which the same are held.

Upon information and belief, complainant alleged that Elijah W. Morgan, on January 14, 1873 and March 20, 1874, had interest in lands described in Exhibit D, attached to the bill, which, about the last-named date, said Morgan, for the purpose of hindering, delaying, and defrauding complainant

and his other creditors, did, together with his wife, convey by deed bearing date January 14, 1873, to Franklin L. Parker, in consideration of one dollar and of said Parker's liability as surety for said Morgan; that this convey-ance was recorded June 15, 1875, in the office of the register of deeds for the county of Washtenaw; and that, when said deed was executed and de-livered, Parker was in no way liable as surety for said Morgan, nor was Morgan indebted to Parker; and that Parker did not pay, nor did Morgan receive, any consideration for said conveyance, but the same was purely voluntary, and it was given and received by the parties thereto for the purpose of concealing the property of Morgan, and of defrauding his cred-itors; and that such deed was delivered and received upon a secret trust with Parker, who held the lands conveyed for the benefit of Morgan, and to sell and dispose of the same as trustee for Morgan. And, upon informa-tion and belief, it is further alleged that Franklin L. Parker sold and con-veyed a large number of the parcels of land described in Exhibit D, and has received large sums of money therefor. The particular parcels con-veyed by Parker are not known to complainant, who asks a full and com-plete discovery of the trusts under which said lands were received and held by Parker, and of the property, money, and effects received by him therefor. It is further charged, upon information and belief, that in the year 1873, and until the death of Lucy W. S. Morgan, in 1887, Elijah W. Morgan was indebted to complainant and other persons in large amounts, and was insolvent; that, in 1874, Morgan combined with his wife, Lucy, her nephew Franklin L. Parker, and the latter's wife, Lucy D. S. Parker, to conceal and protect his property from his creditors; and that all of the conveyances under which the defendants claim title to the lands described in the bill were made in pursuance of such confederacy; and that the grantees knew the insolvent condition of Morgan, and acted with him to effect his fraudulent purpose in making such conveyances. Upon informa-tion and belief, it is alleged by complainant that Morgan was on the 5th day of April, 1889, and for several years prior thereto had been, incompe-tent to have the charge of his person and the management of his property, and on the last-named date, upon the application of defendants Kinne, Parker, and Johnson, as such executors, Franklin L. Parker was, by the order and decree of the probate court of Washtenaw county, appointed guardian of the person and estate of Morgan; that he qualified as such, and entered upon his duties, and continued to act as such guardian until Mor-gan's death. On information and belief, it is further alleged that for many years prior to the time when he became incompetent, and up to the time of his insolvency, Morgan had been and was a man of large property and busi-ness interests in the city of Ann Arbor, engaged in business there, and pos-sessed of real and personal estate, in the county of his residence and else-where, of the value of more than $100,000; that he was careful and precise in the keeping of books, accounts, and papers, and generally in his business methods, and accumulated a large number of deeds, agreements, books of account, receipts, vouchers, and other documents relative to his property rights and interests and business dealings; and that these deeds, books, etc., at some time came into the possession of defendants Kinne, Johnson, and Parker, who have since retained the same, and now have them in pos-session, with a large number of other papers, books, accounts, etc., belonging to said Franklin L. Parker, and relating to the right, title, interest, and claim of Morgan in and to his real and personal estate and property. Dis-covery is prayed of these books, papers, and documents. The bill charges, upon information and belief, that defendant Manley has used due diligence to find and take into possession the real and personal estate of Morgan, but has not succeeded therein, because of the actings and doings of the other defendants, and has not possessed himself of property belonging to Morgan in his lifetime sufficient to discharge any considerable portion of the debts owing by Morgan at his death, because of the fraudulent transfers, convey-ances, and combination of Morgan, his wife, Franklin L. Parker, and his wife, Lucy D. S. Parker.

As excusatory of the apparent delay of complainant in enforcing his claim against Morgan and his alleged fraudulent grantees, the bill states: "That from the year A. D. 1876, until the time of the filing of this your orator's bill

of complaint, he has, by all means at his command, and with all due diligence, endeavored to discover property and assets belonging to said Elijah W. Morgan and his estate out of which to satisfy said claim, demand, and judgment, but by reason of the aforesaid fraudulent actings and doings of said Elijah W. Morgan, Lucy W. S. Morgan, and Franklin L. Parker in their respective lifetimes, and of their representatives since their decease, and of said defendant Lucy D. S. Parker, and by reason of their fraudulent concealment of the aforesaid equitable interests, claims, demands, causes of action, real and personal estate, goods, and chattels belonging to said Elijah W. Morgan and his estate, your orator has been prevented hitherto from so obtaining satisfaction of his aforesaid debt, claim, demand, and judgment; and also that your orator did not discover the facts hereinbefore stated until a few months prior to the commencement of his said suit against the said Elijah W. Morgan in said circuit court of the United States for the Eastern district of Michigan; and also from that time your orator has with all due diligence, and by all ways and means in his power, endeavored to discover such assets of said Elijah W. Morgan and his said estate to obtain satisfaction of his said debt, claim, demand, and judgment out of such assets."

A large number of interrogatories are appended to the bill, to be answered by the defendants, or some of them. The bill prays that defendant Manley set forth an account of the personal estate of Morgan, the amount and particulars thereof possessed by him, how much thereof has been disposed of by him in payment of the intestate's debts and otherwise, what debts and amounts remain unsatisfied, and a discovery of the real estate of which Morgan was seised or entitled; that an account may be taken under the direction of this court of the debts owing by Morgan to complainant and others, and of the personal estate of Morgan now in the hands of defendants, or any of them; that the same may be applied to the payment of the debts of Morgan; that the real estate described in the bill, or so much as is necessary, may be decreed to be sold for the payment of the indebtedness owing by Morgan; that a receiver of the money, property, things in action, real estate, chattels real, and other property and effects of the estate of Elijah W. Morgan may be appointed; and that defendants may be directed to assign, convey, and deliver to such receiver all the property, equitable interests, effects, notes, bonds, mortgages, deeds, books of account, contracts, papers, and securities relating to Morgan's estate; and that defendants appear before the master of this court, and submit to an examination in relation to any matters which they may be legally required to disclose; and that the defendants, and each of them, may be restrained by injunction from receiving the rents and profits of the real estate belonging to Morgan, and from collecting and receiving any of such outstanding personal estate, and from assigning and selling, transferring, conveying, or in any manner disposing of or intermeddling with the said real and personal property, effects, etc.; and for other relief.

To this bill, the defendants Kinne and Johnson, as executors, have demurred, and defendant Lucy D. S. Parker has also filed a demurrer. Each of these pleadings sets forth seven grounds of demurrer. In the view taken by the court of the bill, only the second and the seventh need be considered. These are as follows: "Second. That it appears by the said bill that the entire subject-matter concerning which any relief or discovery is asked is, and was at the time of filing said bill, entirely and exclusively within the cognizance and jurisdiction of the probate court for the county of Washtenaw, Eastern district of Michigan; that the said estate of Elijah W. Morgan and said estate of Franklin L. Parker are both in process of administration by said probate court; and that the same have not been fully administered upon; and that the laws of the state of Michigan give to its probate courts exclusive jurisdiction over the estates of deceased persons." "Seventh. That said bill is entirely wanting in equity, and does not set forth any facts upon which complainant is entitled to any relief whatever." These demurrers are verified by the defendants, and are certified by counsel to be well founded in point of law, as required by general equity rule 31.

Fraser & Gates, for complainant.
Bowen, Douglass & Whiting, for defendants.

SWAN, District Judge (after stating the facts). The first question presented for determination is that as to the jurisdiction of this court to interfere with the property in the possession of the probate court for the county of Washtenaw. The bill calls upon the court virtually to dispossess the administrators of Mrs. Morgan and the executrix of Franklin L. Parker of all control over the property committed to their charge, and to assume the administration of that property, and its distribution among the parties entitled. It prays the appointment of a receiver, and the transfer to this court of all the muniments of title, books of account, securities, documents, and papers, of every kind and nature, belonging to the estate of Elijah W. Morgan, his wife, Lucy W. S. Morgan, and the defendant Lucy D. S. Parker, and an injunction against all interference with the real and personal estate held by the defendants, as executors and administrators, and that of Lucy D. S. Parker, individually.

The rule is well established that "the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the state which prescribe the modes of redress in their courts or which regulate the distribution of their judicial power"; and that "the equity jurisdiction conferred on the federal courts is the same as that the high court of chancery possesses, is subject to neither limitation or restraint by state legislation, and is uniform throughout the different states of the Union." Payne v. Hook, 7 Wall. 425, 430. The only qualification in the application of this principle is that the courts of the United States, in the execution of their jurisdiction over the parties, cannot seize or control property while in the custody of a court of the state. Williams v. Benedict, 8 How. 107; Yonley v. Lavender, 21 Wall. 276; Freeman v. Howe, 24 How. 450; Borer v. Chapman, 119 U. S. 600, 7 Sup. Ct. 342. These cases and many others to the same point are cited and approved in Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906. The consequences of this court taking to itself jurisdiction, and granting the relief prayed by complainant's bill, would be similar in all respects to those which followed the assumption of jurisdiction in the case last cited, where the court below took full control of the administration of the estate, and the administrator appointed by the register of Alleghany county, Pa., pursuant to the statutes of that state, was subjected to the orders of both the federal and state courts. Of these consequences, the supreme court said in the case last cited that "no officer appointed by any court should be placed under the stress which rested upon this administrator, and compelled for his own protection to seek orders from two courts in respect to the administration of the two estates."

Under the decisions of the supreme court in cases where a citizen of another state has resorted to the federal tribunals for the assertion of his rights against the administrator of the decedent citizen of a state where the suit is brought, the utmost relief which he can obtain is the establishment of his debt by the judgment of the federal court against the executor or administrator. He then becomes entitled to come in under the law of the state for such payment upon his judgment as that law, marshaling the rights of cred-

itors, awards to creditors of his class. He obtains no prior lien upon the property, but simply fixes, by the judgment, his status as a creditor, which the administrator is legally bound to recognize in the payment of the debts. The limit to which the federal court may go in favor of such creditor therefore stops short of any interference with the state tribunal which has acquired jurisdiction of the estates of decedents. When the estate is ready for distribution, it is held in Byers v. McAuley, supra, that "the circuit court of the United States might entertain jurisdiction in favor of all citizens of other states, and determine and award their shares of the estate; further than that, it was not at liberty to go."

So far, then, as the bill seeks to disturb or interfere with the property in the custody of the probate court for the county of Washtenaw, and for the administration thereof by this court, by receiver or otherwise, the relief prayed cannot be granted, and the bill cannot be sustained as against the defendants other than Lucy D. S. Parker individually.

As the property attached on the plaintiff's judgment was then admittedly in the possession of the defendants Kinne and Johnson, as administrators of Lucy W. S. Morgan, under their appointment by the probate court for the county of Washtenaw, the attachment was a breach of the rule of comity which protects property in the possession of a state court from process issued out of the federal court, and is invalid for the enforcement of the right claimed by the attaching creditor. Heidritter v. Oilcloth Co., 112 U. S. 294, 302, 5 Sup. Ct. 135; Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570.

2. As the conclusion reached upon this ground of demurrer would not authorize the dismissal of the bill as against Lucy D. S. Parker individually, it becomes necessary to pass upon the demurrer for want of equity. Under this demurrer, and even if it had not been pleaded, it would be competent for the court, upon its own view of the case made by the bill, to decline to enter into any inquiry into the matters charged therein, admitting them to be true, which is the effect of the demurrer, if the court ought not, upon the inherent principles of equity, to grant the relief prayed. It is not necessary that the defendants should have demurred expressly on the ground of laches of complainant, or should have in terms based their defense upon the statute of limitations.

The rule which governs courts of equity in determining the rights of parties where it is apparent that there has been long delay in seeking the aid of the court, and no extenuating facts are set forth to account for such delay, is stated in Badger v. Badger, 2 Wall. 87–94, as follows:

"In such cases courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, and refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor. The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be

so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise, the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

In Wood v. Carpenter, 101 U. S. 135, the defendant was charged with fraud in the disposition of his property in a suit by a judgment creditor, who had recovered judgment in 1860, and brought suit thereon in 1872; alleging that the debtor had in 1858, in order to defraud his creditors, confessed judgments, incumbered his property, and, in 1862, conveyed his real and personal estate to sundry persons, who held the same in secret trust for him. The debtor was arrested in 1862, on final process, to compel the payment of the judgment; but deposing that he was not worth $20, and had in good faith assigned all his property to pay his creditors, he was released, pursuant to the law of the state. The creditor believing the statement of the debtor, and accepting his assurance that his son-in-law would, with his own means, purchase the judgment for 50 cents of the principal and interest, sold it, in 1864, to the debtor's son-in-law. The creditor afterwards discovered that the money he received for the judgment belonged to the debtor, who had acquired an indefeasible title to the property. The creditor sued for the amount of which he had been defrauded by the deceit of his debtor, who pleaded the statute of limitations in defense of the suit. The court held that the statute of limitations commenced running when the fraud was perpetrated, and it was not avoided by the replication averring that the debtor had fraudulently concealed the facts stated in the declaration touching the incumbrance and conveyance of his property, its real ownership, and the confessions of judgments, and that the creditor had no knowledge of them until a short time before suit was brought. By the statute of Indiana, where the suit was tried, actions of that nature were required to be commenced within six years after the cause of action accrued, although it was provided that, "if any person liable to an action shall conceal the fact from the person entitled thereto, the action may be commenced at any time within the period of limitation, after the discovery of the cause of action." Rev. St. 1894, § 301.[1]  There was no averment in plaintiff's pleading that, during the period over which the transactions under inquiry extended, the plaintiff ever made the slightest inquiry in relation to either of them. There, as here, the material facts were of record, and the conveyances complained of were also recorded. The court said of these conveyances and judgments:

"If they were in trust for the defendant, as alleged, proper diligence could not have failed to find a clue in every case that would have led to evidence not to be resisted. With the strongest motives to action, the plaintiff was supine. If underlying frauds existed, as he alleges, he did nothing to unearth them. It was his duty to make the effort. * * * The discovery of the cause of action, if such it may be termed, is thus set forth: 'And the plaintiff further avers that he had no knowledge of the facts so concealed by the defendant until the year A. D. 1872, and a few weeks only before the

---

[1] Rev. St. 1881, § 300.

bringing of this suit.' * * * In this class of cases the plaintiff is held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is; so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.' Stearns v. Page, 7 How. 819–829. "This is necessary to enable the defendant to meet the fraud and the time of its discovery.' Moore v. Greene, 19 How. 69–72. * * * Beaubien v. Beaubien, 23 How. 190. * * * A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it had not been made sooner. Carr v. Hilton, 1 Curt. 390, Fed. Cas. No. 2,436. The fraud intended by the section which shall arrest the running of the statute of limitation must be one that is secret and concealed, and not one that is patent or known. Martin v. Smith, 1 Dill. 85, Fed. Cas. No. 9,164. 'Whatever is notice enough to excite the attention, put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. * * *' "

Mr. Justice Swayne's opinion in this case summarizes the result of the authorities upon cases where fraudulent concealment is tendered as an excuse for delay in bringing suit, as follows:

"The fraud and deceit which enable the offender to do the wrong may precede its perpetration. The length of time is not material, provided there is the relation of design and its consummation. Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has accrued must be shown to be consistent with the requisite diligence."

While this case was upon the law side of the court, the doctrines there declared are clearly applicable to proceedings in equity. Bank v. Carpenter, 101 U. S. 567, in which, as in the case at bar, the defendants demurred to the bill, which was founded on substantially the same facts as in the preceding case of Wood v. Carpenter. In Harwood v. Railroad Co., 17 Wall. 78, five years' unexplained delay, although the bill contained an allegation of ignorance, in general terms, of the fraudulent acts for which redress was sought, but did not allege when complainants acquired their knowledge, or give a satisfactory reason why it was not sooner obtained, were held sufficient to bar relief from an alleged collusive and fraudulent decree and sale. In Godden v. Kimmell, 99 U. S. 201–211, the doctrine is again affirmed that the party seeking relief after long delay, against an alleged concealed fraud, must plead specifically what were the impediments to an earlier prosecution of his claims, how he came to be so long ignorant of his alleged rights, the means used by the defendant to keep him in ignorance, and how he first came to the knowledge of the right. In that case 14 years elapsed from the execution of the deed sought to be avoided and the filing of the bill. In Marsh v. Whitmore, 21 Wall. 178–185, a bill was filed for an accounting for the value and proceeds of bonds less than 12 years after they had been purchased by the defendant. The plaintiff had remained inactive after their sale. His bill failed to state the impediment, if any, to prompter action, or when he first learned of his supposed wrongs. His language was

'that he was not aware of the purchase by the defendant until lately. This averment the court characterizes as "language altogether too vague to invoke the action of a court of equity," and approves the rule of pleading laid down in Badger v. Badger, 2 Wall. 87, in all its particulars. Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942. See, also, Sullivan v. Railroad Co., 94 U. S. 807, holding also, inter alia, that the defense of laches need not be pleaded to defeat a stale claim, and that each case is governed by its own circumstances, independent of the statute of limitations.

The averments of the bill are obviously insufficient under these authorities. Does the case made by the bill come within the principles ruled by these authorities? Briefly summarized the complainant's case is this: In September, 1876, he acquired, "for a valuable consideration" (the amount of which is not stated), the notes given by Morgan to Hattie C. Eames, November 20, 1873, which were payable, with the stipulated interest, 18 months after date. These notes were then overdue. It does not appear for what, if any, consideration, they were given by Morgan to the payee. Complainant held these notes without, so far as appears from his bill, making any effort to collect them from Morgan, or even presenting them for payment, until the statute of limitations of this state (which allows six years for suit on simple contracts) had nearly run against recovery upon them. They became due May 20, 1875. On the 12th of July, 1881, just before the bar of the statute would, have been perfected against an action upon them, he recovered judgment thereon for the sum of $5,882.72. Whether his inactivity was prompted by his confidence in Morgan's ability to pay them and his desire to continue as long as possible the investment at the profitable rate of 10 per cent. interest is a matter of no moment. If he knew that Morgan was disposing of his property, and did nothing to enforce his claim, he is manifestly debarred from relief on the plainest principles of equity. If he did not know of these conveyances, he is equally inexcusable for ignoring the information which was spread upon the public records of the county. Although he avers that, from the year 1876 until the time of filing this bill, he made diligent efforts to discover property of Morgan from which he could make the amount of his judgment, "but by reason of the fraudulent actings and doings of Elijah W. Morgan, Lucy W. S. Morgan, and Franklin L. Parker, and of their representatives since their decease; and of defendant Lucy D. S. Parker, and by reason of their fraudulent concealment of the equitable interests, real and personal estate, goods and chattels, belonging to said Morgan and his estate, your orator has been prevented hithertofore from so obtaining satisfaction of his aforesaid debt, claim, demand, and judgment; and also that your orator did not discover the facts hereinbefore stated until a few months prior to the commencement of his said suit against said Elijah W. Morgan in said circuit court of the United States for the Eastern district of Michigan," and, since that time, that he has diligently sought to discover such assets applicable to the payment of his debts,"—no affirmative acts or misleading devices are alleged. This is too vague and general an

averment to excuse the delay of the complaint. It is not alleged in the bill that any demand was made upon Morgan for the payment of this judgment, or that the same was ever presented to Parker, his guardian, or ever to defendant Manley, Morgan's administrator.

By section 5884, p. 1537, 2 How. Ann. St. Mich., it is provided that:

"When there shall be a deficiency of assets in the hands of an executor or an administrator, and when the deceased shall in his lifetime have conveyed any real estate or any right or interest therein with the intent to defraud his creditors, or to avoid any right, debt, or duty of any person, or shall have so conveyed such estate that, by law, the deeds or conveyances are void as against creditors, the executor or administrator may, and it shall be his duty to commence and prosecute to final judgment, any proper action or suit, at law or in chancery, for the recovery of the same, and may recover for the benefit of the creditors all such real estate so fraudulently conveyed and may also for the benefit of the creditors, sue and recover for all goods, chattels, rights or credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the manner of such fraudulent conveyance."

Section 5885 qualifies this duty by making its execution dependent upon the application of creditors of the deceased, and their payment, or giving such security for costs and expenses of such suit as the probate court shall judge just and equitable.

The bill fails to aver that Morgan's administrator has ever been requested by complainant to institute the action authorized by this section, or take any steps thereunder. From July 12, 1881, until February 2, 1891, at which last date complainant brought suit in this court upon the judgment recovered against Morgan in the circuit court for the county of Washtenaw, it does not appear from the bill, otherwise than by the general statement just quoted,—of the efforts of complainant to realize his judgment,—that he took out execution in the state court, or exhausted his legal remedies therein. So far as the bill shows, he seems to have remained quiescent, although, as he avers, from the year 1873, Morgan (before that time a man of large property) had become practically insolvent, by the conveyances which are here charged to have been frauds upon his creditors, and from which the bill seeks relief. No reason is shown for this inaction and the failure of complainant promptly to seek the like remedy in the state court, as a judgment creditor of Morgan, to that here sought against these alleged fraudulent conveyances. No greater obstacles existed at and after the date of his judgment in the state court, or at any time since the year 1876, to the enforcement of his claim against Morgan, than at the time the judgment at law was recovered in this court, or when this bill was filed. Accepting his statement that, in 1889, and for many years prior thereto, Morgan was mentally incompetent, and, by reason of that fact, Franklin L. Parker, now deceased, was then appointed his guardian, and acted as such until the death of Morgan, January 28, 1892, yet neither Morgan's condition nor the fact that he was under guardianship constituted any impediment to the enforcement of the complainant's judgment which excuses his failure to take the necessary proceedings. More than this, on the 20th of June, 1887, after complainant has held the notes for nearly 11

years, Lucy W. S. Morgan, the wife of Elijah W. Morgan, and his alleged co-conspirator in the so-called "fraudulent conveyances" sought to be avoided by this bill, departed this life, and any light which she could have thrown upon the transactions complained of, was forever lost. These deeds, which the bill claims were voluntary, and in fraud of his rights, and those of other creditors of Morgan, were largely made prior to the execution of the notes upon which complainant's judgment is founded. The conveyances to Franklin L. Parker bear date January 14, 1873, over 10 months before the notes mentioned, and were recorded June 15, 1875, over 15 months before these notes were transferred by Hattie C. Eames to the complainant.

Touching these conveyances to Parker, aside from the fraudulent character imputed to them as purely voluntary, and therefore assailable by Morgan's creditors, the only circumstance disclosed by the bill which tends to impugn the conduct of Parker, or to lay him open to the charge of having been a participant in the supposed fraud of Morgan and his wife, is the fact that they were not recorded until two years after their execution. As Morgan is alleged to have been a man of large property, and it is not claimed that the deeds to Parker embraced all his realty, withholding them from the record was not necessarily or probably a fraud upon complainant. He had no right to complain of transactions perfected before he became Morgan's creditor. Graham v. Railroad Co., 102 U. S. 148.

With regard to the property conveyed by Morgan to his wife and to Lucy D. S. Parker, the bill does not specify the date of the conveyances, except by the general allegation that, in the years 1873 and 1874, Morgan combined and confederated with his wife, and with Franklin L. Parker and his wife, to transfer and incumber his property, and conceal the same from his creditors; and that the conveyances under which the defendants claim title to the lands which the complainant seeks to subject to the payment of his debt were made in pursuance of such combination, and for the fraudulent purpose of preventing the same from being applied to the payment of Morgan's debt, with knowledge on the part of the grantees of Morgan's insolvent condition and his indebtedness. Save in this general way, there is no allegation in the bill of any concealment by Morgan or his grantees, or any other active measure taken by them, or either of them, to defeat the claims of Morgan's creditors. It is not even charged that the conveyances were withheld from the record, and that the creditors were thereby lulled into a feeling of security, or were dissuaded from proceedings to avoid the alleged fraudulent transfers. The fair inference from the allegations of the bill relative to these conveyances is that they were seasonably recorded. It is a matter of no moment that complainant did not have actual knowledge of their execution, if, as may be fairly assumed, they were recorded in the office of the register of deeds for the county of Washtenaw. Such records afforded means of knowledge, which is equitably synonymous with knowledge itself, and leave without excuse one who so tardily seeks relief from transactions which, if he had diligently pursued his rights, he might

easily have discovered and proved at a time when the actors in them were living, and had the facts fresh in mind. Where the matters complained of as frauds are evidenced by public records, accessible to all, it is settled by the judgments of the federal and state courts alike that the party who seeks to avoid the effect of such notice must show something more than concealment by mere silence,—some affirmative act of deception; some misleading device or contrivance on the part of the party charged with fraud intended to exclude suspicion, prevent inquiry and the institution of adequate measures of redress. New Albany v. Burke, 11 Wall. 107; Wood v. Carpenter, 101 U. S. 135; Pearsall v. Smith, 149 U. S. 231–236, 13 Sup. Ct. 833; Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942; Robert v. Morrin, 27 Mich. 306; Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437.

Instead of taking such steps as the notice imparted by these conveyances should have prompted (for they informed him that Morgan was disposing of his property), and although the bill avers that he was largely indebted at this time, which seems to have been as well known to complainant then as now, complainant did nothing. If these conveyances were fraudulent, or if he had reason to believe them so, the statutes of Michigan provided an ample remedy by which he could have contested their validity. He might have filed a judgment creditors' bill in the state court, or could have instituted a suit in attachment at any time since 1876, the date when he acquired the notes in question, by making affidavit, pursuant to the statute, that Morgan, the debtor, had transferred, assigned, or conveyed (or was about to do so) his property with intent to defraud his creditors, or that he had reason to believe that his transfers and conveyances were so made and for that purpose, or he could have called upon Morgan's administrator to take the proceedings authorized by section 5884, 2 How. Ann. St. In either of these proceedings the amplest latitude of inquiry would have been allowed him, and the facts attending the transfer and the considerations and motives thereof could have been fully investigated. Ordinary diligence should have stimulated complainant to prompt action. The course he pursued was the opposite. He has delayed inquiry and pursuit with at least constructive knowledge of the acts of which he now complains, and knowing, also, that Morgan, by age and infirmity, had become incompetent, and although warned by the death of Lucy W. S. Morgan that the lapse of time was erecting the strongest equitable obstacles to his pretensions. Franklin L. Parker died February 20, 1894. June 8, 1894, complainant filed this bill, after the death of all the actors in the transactions of which he complains. Assuming that the conveyances made by Morgan were made, as charged in the bill, as early as 1874, it appears that the defendants and those whom they represent have been in possession of the lands conveyed by Morgan for nearly 20 years. For 18 of those years, viz. since September, 1876, complainant has acquiesced in Morgan's conveyances and defendants' possession of the property, until every witness to the transaction which he seeks to investigate has passed away.

By the statute of Michigan (2 How. Ann. St. p. 2127, § 8698), it is provided that:

"After the 31st day of December, in the year of our Lord eighteen hundred and sixty-three, no person shall bring nor maintain any action for the recovery of any lands or the possession thereof, or make any entry thereupon unless such action is commenced or entry made within the time herein limited, therefor, after the right to make such entry or to bring such action, shall have first accrued to the plaintiff or to some person through whom he claims, to wit: First. Within five years where the defendants claim title to the land in question, by, or through some deed made upon the sale thereof by an executor, administrator or guardian or by a sheriff or other proper ministerial officer under the order, judgment, decree or process of a court or legal tribunal of competent jurisdiction within this state. Second. Within ten years where the defendant claims title under a deed made by some officer of this state or of the United States, authorized to make deeds upon the sale of lands for taxes assessed and levied within this state. Third. Within fifteen years in all other cases."

Whatever infirmity inhered in the conveyance by Morgan to the decedents, Lucy Morgan and Franklin L. Parker, the lapse of time has healed, unless the case made by the bill can be brought within the provision of section 8724. That section provides:

"If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he has such cause of action, although such action would be otherwise barred by the provisions of this chapter."

The conveyances complained of neither concealed themselves, nor were such affirmative acts of fraud as are excepted from the operation of the statute. For aught that appears from the bill, the facts it states as ground of relief were as well known to complainant for at least 15 years before this bill was filed as they now are. Complainant was under no disability, nor is it claimed that any affirmative acts on the part of Morgan, his wife, or Franklin L. Parker have misled him in any particular, or induced his inaction. The utmost of his charges against the defendant Lucy Parker is that she had knowledge of the object which Morgan sought to accomplish by the conveyance of his property. This charge is made upon information and belief, and it clearly appears from the bill that complainant was in possession of that information, and had the same belief which he now entertains, before it became necessary to sue upon his judgment in this court, and for over three years before the filing of this bill. The bill makes no case whatever against the defendants Kinne and Johnson, except their possession in their representative characters as executors of the estate of Lucy W. S. Morgan of the property conveyed to her by her husband, and except, also, the charge, upon information and belief, that they have in their possession books, papers, documents, etc., which would support the case of complainant. As this charge is made upon information and belief, it lacks the weight and significance which a positive averment would be entitled to receive, and, in the view we have taken of the case, is immaterial.

There is no equity in complainant's bill, and it should be dismissed, with costs.