In re Robbie Dale WOOD, f/d/b/a a partner in the Alaco Group, the Alaco Group, Ltd., Blue Ridge Mining Co., The Alacoal Company, The Alacoal Companies, Inc., and Shiloh Mining & Coal Processors, Inc., Debtor.

**Bankruptcy No. BK83–5469.**

United States Bankruptcy Court, N.D. Alabama, S.D.

June 25, 1985.

**514**

Milton Garrett, Birmingham, Ala., trustee.

Yearout, Hardy & Myers, P.C., Birmingham, Ala., for intervenors.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Bankruptcy Judge.

This cause came on to be heard before the Court on the PETITION OF THE TRUSTEE TO COLLECT ASSETS, RESOLVE CLAIMS OF CREDITORS, RESOLVE ADVERSARY PROCEEDINGS AND CLAIMS OF PLAINTIFFS IN ADVERSARY PROCEEDING NO. 84-0014 PENDING HEREIN. The Alabama Surface Mining Commission (hereinafter called "the Commission") filed a proof of claim for $5,000.00 in Mr. Wood's Chapter 7 case on November 14, 1983 for a civil penalty which had been assessed against the various coal companies in which Mr. Wood was a part owner (Commission Docket No. F-78-049). The Trustee of Mr. Wood's Bankrupt Estate, Milton Garrett, Esquire, has objected to the allowance of this claim and has further petitioned this Court to order the Commission to discharge the sureties of certain reclamation bonds so that these sureties will in turn release an escrow fund of approximately $100,000.00 which they hold to secure their obligations under the reclamation bonds. The Trustee claims 12½% of this fund as property of the estate pursuant to 11 U.S.C. Section 541(a)(1)

(1978) since this was Mr. Wood's proportionate share in the various coal companies.

The other partners in these coal companies (hereinafter called "the Intervenors") have intervened in the Trustee's counterclaim against the Commission. The Intervenors have filed an adversary proceeding in which they are seeking to have Mr. Wood's share of a certain partnership tax indebtedness declared non-dischargeable. If the reclamation bonds are released by the Commission, the sureties have agreed to release 12½% of the escrow fund to Mr. Wood's bankruptcy estate and the remainder to the Intervenors. The Intervenors will then use this fund to pay off the partnership tax debt.

A pre-trial conference was held on December 19, 1984. At this pre-trial conference, the Trustee and the Intervenors presented their argument that the Commission lacked jurisdiction over the Commission's Case No. 82-306 which was filed against the Coal Companies under the *Commercial Standard*[1] case. The Commission through Milton McCarthy, Esquire, Assistant Attorney General, asserted that the jurisdictional requirement that a verified complaint be filed with the Commission within nine months of the completion of mining operations was subject to two exceptions: (1) acts of God and (2) extensions granted by the director for reasonable cause. *See Commercial Standard Ins. Co. v. Alabama Surface Mining Reclamation Comm'n,* 443 So.2d 1245, 1248 (Ala. Civ.App.1983); Ala.Code Section 9–16–39(g) (1975). Mr. McCarthy indicated that the Commission would attempt to rely on the extension exception.

All of the matters in the Trustee's petition, including the adversary proceeding filed by the Intervenors, were set for trial on January 10, 1985. The Commission and the Trustee agreed to withhold the trial on the Trustee's objection to the Commission's claim. The Intervenors also agreed to withhold the trial on their adversary proceeding. The only matters heard by the Court, then, were the Trustee's counter-

---

1. *See infra* n. 4 and accompanying text.

claim and the claim of the Intervenors seeking to have the Commission discharge the sureties from their obligations on the reclamation bonds.

## FINDINGS OF FACT

Prior to the filing of his Chapter 7 petition on October 11, 1983, Robbie Dale Wood had invested in various businesses which were primarily engaged in surface coal mining. Mr. Wood owned a 12½% interest in these businesses. The initial entity was a partnership doing business as The Alaco Group. A second partnership was called The Alacoal Companies, and the third was a corporation named The Alacoal Companies, Inc. Several other entities were either owned by or were successors of these three companies; they were Blue Ridge Mining Co., Shiloh Mining & Coal Processors, and The Alacoal Group, Limited (hereinafter, these various entities will be collectively referred to as the "Coal Companies").

Under the Alabama law that was in effect at the time of these transactions [2] anyone wishing to engage in coal surface mining must first obtain a license and permits from the Alabama Surface Mining Commission (hereinafter called "the Commission") pursuant to Alabama Code sections 9–16–35 to –37 (1975). Further, an applicant was required to post performance bonds for each permit to insure that the mined land was properly reclaimed. *See* Ala.Code Section 9–16–44 (1975). Unless the operator wanted to deposit cash or certain negotiable instruments in lieu of a bond, the bond must have been executed by the operator and a corporate surety. *See id.* at 9–16–44(c).[3]

The Coal Companies obtained the required licenses and permits and posted the necessary reclamation bonds. These bonds, which are at the heart of this controversy, were executed by two corporate sureties Morrison Assurance Company and Northwestern National Insurance Company. These sureties required the Coal Companies to put up collateral to secure the sureties' obligations under the bonds. Mr. Gerald Trevarthen, an agent for Commercial Insurance Management Agency and for Northwestern National Insurance Company, testified that the sureties are holding $73,200.00 in principal which has been in an interest bearing account since 1978 or 1979. The parties estimate that including accrued interest this collateral fund is worth approximately $100,000.00.

On March 31, 1982, Mr. Kenneth Cagle, an Inspector for the Commission filed a verified complaint with the Commission in which he alleged that the Coal Companies had violated the surface mining laws of the State of Alabama by failing to reclaim the land covered by several permits. On the face of this complaint, it appears that "all operations [had] ceased within the first quarter of 1980 and (sic) no further mining activities have occurred since that time." On April 2, 1983, Mr. Marlin V. McLaughlin, Jr., the Chief Hearing Officer issued a CITATION AND ORDER citing the Coal Companies for the violations alleged in the verified complaint and ordering the Coal Companies to appear at a public hearing to be held on October 14, 1983 to show cause why they should not be found "subject to all legal sanctions including civil penalties and action on the reclamation bond."

On October 20, 1983, the Coal Companies filed a MOTION TO DISMISS the proceeding, Case No. 82–306, "including any and all requirements ... against each and every defendant-respondent and sureties to perform or do certain things ... including ... reclamation, and to dismiss any claim against any of the said respondents in any way arising out of mining operations of [the Coal Companies], and all ... claims on all permits and bonds of said respondents...." Citing the case of *Commercial Standard Ins. Co. v. Alabama Sur-*

---

**2.** Effective May 6, 1981, Alabama Code Section 9–16–30 to 40, –42 to –53 (1975) were repealed. *See* Ala.Code Section 9–16–107 (1984 Supp.)

**3.** Alabama Code Section 9–16–44(d) (1975) provided that the Commission will not require a corporate surety under circumstances which are not pertinent to this case.

*face Mining Reclamation Comm'n,* 443 So.2d 1245 (Ala.Civ.App.1983), *cert. denied* 443 So.2d 1245 (Ala.1984), *cert. denied* —— U.S. ——, 104 S.Ct. 3514, 82 L.Ed.2d 822 (1984), the Coal Companies contend in their MOTION TO DISMISS that the Commission never acquired jurisdiction since the verified complaint in Case No. 82–306 was not filed within nine months after the completion of operations.[4]

Apparently recognizing that the *Commercial Standard* case was "on all fours" with Case No. 82–306, Mr. McLaughlin entered an order on November 14, 1983 continuing the case generally "pending the final resolution of the matters addressed in the case of Commercial Standard Insurance Co. v. Alabama Surface Mining Commission presently on appeal...." Mr. McLaughlin further ordered:

> That following the completion of the Appellate process resulting either the affirmation of the decision of the Alabama Court of Civil Appeals or the rendering of a differing opinion by the Alabama Supreme Court, the aforesaid Motion to Dismiss shall either be set for oral argument or an appropriate decision rendered by the Hearing Officer.

No further action has been taken, however, in the Commission's Case No. 82–306 against the Coal Companies and their sureties on the bonds; and the Commission refuses to discharge the sureties from their obligations under the reclamation bonds even though writs of certiorari have been denied by both the Alabama Supreme Court, *Commercial Standard Ins. Co. v. Alabama Surface Mining Reclamation Comm'n,* 443 So.2d 1245 (Ala.1984), and by the Supreme Court of the United States, *Commercial Standard Ins. Co. v. Alabama Surface Mining Reclamation Comm'n,* —— U.S. ——, 104 S.Ct. 3514, 82 L.Ed.2d 822 (1984).

Mr. Dennis Purdy Willett, Jr., Director of the Alabama Surface Mining Commission, appeared at the trial and testified. On examination by Gusty Yearout Esquire, attorney for the Intervenors, Mr. Willett demonstrated that he continued to espouse the "continuing violation" approach to an operator's failure to reclaim surface mined land. Mr. Willett further demonstrated that he was under the mistaken impression that the decision of the Alabama Court of Civil Appeals was not final after both the Alabama and United States Supreme Courts denied writs of certiorari.[5] Mr. Wil-

---

**4.** Alabama Code Section 9–16–51(a) (1975) provides in pertinent part:

> Complaints alleging a violation of the article or rules or regulations of the commission must, as a jurisdictional matter, be filed with the commission within 90 days of the event or events giving the rise to such complaint.

Ala.Code Section 9–16–51(a) (1975). Rejecting the Commission's contention that the failure to reclaim surface mined land constituted a continuing violation, the *Commercial Standard* court ruled that the "event or events giving rise" to a complaint for failure to reclaim is the failure to complete the reclamation of surface mined land with six months after the completion of operations. *See* Ala.Code Section 9–16–39(g) (1975). Pursuant to Alabama Code section 9–16–51(a) (1975) then, the Commission had 90 days from six months after the completion of surface mining operations on the land covered by the particular permits or a total of nine months from the date of such completion in which to file a verified complaint. The court reasoned that this limitation on the Commission's authority would effectively be read out of the code if the Commission's "continuing violation" argument were accepted. Because the ver-

ified complaint in the *Commercial Standards* case was filed some fourteen months after mining operations had ceased, the Court of Civil Appeals of Alabama held that the Commission lacked subject matter jurisdiction to hear the complaint against the defendant/operators. The court further held that the surety on the reclamation bonds could assert the defendant/operator's defense of the lack of jurisdiction and ruled that the surety was due to be discharged from its obligations on the reclamations bonds.

**5.** This is clearly illustrated by the following excerpt from Mr. Yearout's examination of Mr. Willett:

> Q. [I]t was your position in the Commercial Standard case, that there was never any time period in which the Commission had to bring a Complaint against a party for failure to reclaim the land; isn't that correct?
>
> A. That's correct.
>
> Q. Failure to reclaim the land, is a violation of the Act; is it not?
>
> A. It is.
>
> Q. And throughout your tenure as a director of the Alabama Surface Mining Commission,

lett also testified that the coal companies did not request nor receive any extensions of time for reclamation and that there were no acts of God which would have prevented the reclamation from being done.

The Commission filed a proof of claim in this case for $5,000.00. The Commission's claim is based upon a civil penalty which was assessed on October 12, 1978 for violation of the Alabama Surface Mining Reclamation Act of 1975. This penalty was to be suspended upon the reclamation of the adjacent land which is the subject of the complaint in Case No. 82–306.

The Commission objects to the Court's granting the relief sought by the Trustee and the Intervenors on several grounds. The Commission contends: (1) that this Court lacks subject matter jurisdiction; (2) that as a state agency, it is immune from suit under the doctrine of sovereign immunity; (3) that the Intervenors do not have standing to sue; (4) that it does not have possession nor control over any property of the estate; and (5) that the *Commercial Standard* case is not on point since earlier complaints have been filed with the Commission. The Court will address each of these contentions in that order.

## CONCLUSIONS OF LAW AND APPLICATION TO FACTS

### I. JURISDICTION.

The Court's jurisdiction in this case is controlled by the provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 which was passed on July 10, 1984. Under the new jurisdiction provisions, the district courts have exclusive jurisdiction of all cases under title 11, 28 U.S.C. Section 1334(a) (1984). The district court in which a case under title 11 is commenced or is pending has exclusive jur-

isdiction of all property of the debtor, wherever located, as of the commencement of the case, and of the estate. 28 U.S.C. Section 1334(d) (1984). The district courts also have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to a case under title 11, 28 U.S.C. Section 1334(b) (1984). The bankruptcy judges, as a unit of the district court, constitute the bankruptcy court for the district. 28 U.S.C. Section 151 (1984). Because the grant of jurisdiction to the district court in 28 U.S.C. Sections 1334(a) and (d) (1984) is exclusive, the term "district courts" in those sections must mean both the district courts and the bankruptcy judges as a unit of the district court. *See In re Lorren,* 45 B.R. 584, 587, 12 B.C.D. 549, 550 (Bkrtcy.N.D.Ala.1984). Otherwise, Congress would have failed to vest the bankruptcy judges with any jurisdiction over cases and proceedings under title 11 or over property of the estate. *Id.*

The legislative history to the Bankruptcy Reform Act of 1978 clearly illustrates that Congress intended to vest the bankruptcy courts with very broad powers to completely resolve matters which arise within a bankruptcy case. The following exerpt from the legislative history of 28 U.S.C. Section 1471(b) (1978) aptly illustrates this point:

(b) Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceeding arising under title 11 or arising under or related to cases under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the Bankruptcy Code. Action (sic) that formerly had to be tried in state court or in federal dis-

you continually took the position, all the way up to the time the Supreme Court of Alabama decided the case, that there was no time period to bring a verified Complaint against a party for failure to reclaim the land; am I correct about that?

....

A. That matter is still in litigation and that is still my own opinion.

Q. Well, I am glad you gave me your opinion, but, what I am trying to identify, right, now,, is that the Commercial Standard case, has been decided by the Supreme Court of Alabama; has it not?

A. No, they declined to hear it.

Q. Did it go to the Supreme Court of the United States?

A. They declined to hear it.

trict court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. The idea of possession or consent as the sole basis for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.

. . . .

The phrase "arising under" has a well-defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemption under 11 U.S.C. Section 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action of the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based upon a right given by one of the sections in subchapter III of chapter 5 of title 11. Many of these claims would be claims arising under or related to a case under title 11. Indeed, because title 11, the Bankruptcy Code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way "related to" a case under title 11. In sum, the combination of the three

bases for jurisdiction, "arising under title 11," and "related to a case under title 11" will have no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

H.R. 95–595 p. 445, U.S.Code Cong. & Admin.News 1978, 5787, p. 6401. This broad jurisdiction was vested in the bankruptcy courts by the automatic referral provision of 28 U.S.C. Section 1471(c) (1978) which was held to be unconstitutional in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, 6 C.B.C.2d 785 (1982).

In response to the *Marathon* decision the Judicial Conference proposed a rule of reference known as the "Emergency" or "Model Rule" which was adopted by the Northern District of Alabama on December 22, 1982.[6] The bankruptcy judges were again vested with very broad powers under the emergency rule. With certain exceptions,[7] the bankruptcy judges were empowered to "perform in referred cases and proceedings all acts and duties necessary for the handling of those cases and proceedings." Emergency Rule Section (d)(1) (December 22, 1982). The referral provisions were automatic, but the reference to a bankruptcy judge could be withdrawn by the district court at any time. *See id.* at (c). The constitutional objections to 28 U.S.C. Section 1471(c) (1978) were resolved under the Emergency Rule by providing that in "related proceedings"[8] the bank-

---

**6.** The constitutionality of the Emergency or Model rule has been upheld by every circuit to have considered the question. *See In re Comm. of Unsecured Creditors of F S Communications Corp.*, 760 F.2d 1194 (11th Cir.1985); *In re Stewart*, 741 F.2d 127, 12 BCD 308 (7th Cir.1984); *In re Landmark Capital Co.*, 745 F.2d 1266 (9th Cir.1984); *In re Kaiser*, 722 F.2d 1574 (2nd Cir. 1983); *In re Braniff Airways, Inc.*, 700 F.2d 214, 215 (5th Cir.) *cert. denied*, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).

**7.** Section (d)(1) of the Emergency Rule provided:

> The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:
> (A) a proceeding to enjoin a court;

(b) a proceeding to punish a criminal contempt—
  (i) not committed in the bankruptcy judge's actual presence; or
  (ii) warranting a punishment of imprisonment;
(C) an appeal from a judgment, order, decree, or decision of a United States Bankruptcy Judge; or
(D) jury trials.
Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.
Emergency Rules (d)(1) (December 22, 1982).

**8.** Emergency Rule (d)(3)(A) provided:

> Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings

ruptcy judge could not enter a judgment or dispositive order. *Id.* at (d)(3)(B). Instead, the bankruptcy judge was required to submit findings, conclusions, and a proposed judgment or order to the district judge unless the parties consented to the bankruptcy judge's entering a judgment or order. *Id.* These provisions remedied the constitutional defects which were present under 28 U.S.C. Section 1471(c) (1978) since under the Emergency Rule the Article III district courts retained ultimate control over matters which were not central to the bankruptcy case. *In re Comm. of Unsecured Creditors of F S Communications Corp.*, 760 F.2d 1194 (11th Cir.1985); *In re Lafayette Radio Elec. Corp.*, 761 F.2d 84 (2nd Cir.1985) *see supra* n. 6.

Except for a modification of terminology, permissive reference, and the removal of the restrictions contained in section (d)(1) of the Emergency Rule, *see supra* No. 7, Section 157 of title 28 is in essence a codification of the Emergency Rule. *In re Tom Carter Enters., Inc.*, 44 B.R. 605, 609, 12 B.C.D. 536, 539 (C.D.Cal.1984); *Matter of Baldwin-United Corp.*, 48 B.R. 49, 54, 12 C.B.C.2d 378, 382 (Bkrtcy.S.D.Ohio 1985). Under 28 U.S.C. Section 157(a) (1984), the district court *may* provide that any or all cases under title 11 and any or all proceedings arising under or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.[9] 28 U.S.C. Section 157(a) (1984). If a proceeding is a "core proceeding" arising under title 11 or arising in a case under title 11, the bankruptcy judge may hear and determine the proceeding and enter a final judgment or order thereon. 28 U.S.C. Section 157(b)(1) (1984). Such judgments or orders are subject to review by the district court under 28 U.S.C. Section 158.

*Id.; see* 28 U.S.C. Section 158 (1984). Under 28 U.S.C. Section 157(c)(1) (1984), a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. 28 U.S.C. Section 157(c)(1) (1984). Any final order in such proceedings must be entered by the district court after the bankruptcy judge has submitted proposed findings of fact and conclusions of law to the district court. The bankruptcy judge must determine whether a proceeding is a core proceeding or is a proceeding that is otherwise related to a case under title 11. 28 U.S.C. Section 157(b)(3) (1984).

Thus Congress clearly intended that the bankruptcy judges be empowered to hear a broad range of matters subject to the substantial controls of an Article III court. As was aptly stated in *In re Lion Capital Group*, 46 B.R. 850, 12 C.B.C.2d 59, 12 B.C.D. 840 (Bkrtcy.S.D.N.Y.1985):

> *Marathon* concerned a court structure vastly different from that crafted by the Bankruptcy Amendments and Federal Judgeship Act of 1984. As therein reconstituted, the bankruptcy courts are adjunct to the district courts where jurisdiction is vested pursuant to 28 U.S.C. Section 1334 (1984). The bankruptcy courts assist, upon reference, in the exercise of the mandate subject to four considerable controls: withdrawal of the reference of both core and related proceedings pursuant to Section 157(c)(2), the opportunity for de novo review by the district court of related proceedings pursuant to Section 157(c)(1), retention of the ability of the district court to enter final orders and judgments in such proceedings as also provided by Section 157(c)(1), and appointment of bankruptcy

---

include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate.

. . . .

A proceeding is not a related proceeding merely because the outcome will be affected by state law.

Emergency Rule Section (d)(3)(A) (December 22, 1982).

9. Local Rule of the District Court of the Northern District of Alabama adopted July 16, 1984 provides:

Pursuant to 28 U.S.C. Section 157(a), as amended by Public Law 98–353, 98 Stat. 333, all cases under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11 are hereby referred to the Bankruptcy Judges for this district.

judges by the courts, 28 U.S.C. Section 106, Section 152 (1984).

On the basis of similar controls alone, the Sixth Circuit ruled that bankruptcy courts acting under the Emergency Rule could constitutionally entertain core and related proceedings. *White Motor Corp. v. Citibank, N.A.*, 704 F2d 254, 263–64 [8 C.B.C.2d 274] (6th Cir.1983). All of the controls relied on by the *White Motor* and [In re] *Kaiser* [722 F.2d 1574 (2nd Cir.1984)] courts remain in place under Section 157, save the application of the clearly erroneous rule to appeals from final orders and judgments in core-proceedings pursuant to Rule 8013 of the Rules of Bankruptcy Procedure. Congress' implicit deletion of the Emergency Rule's requirement of de novo review by the district courts for non-related cases is hardly of constitutional moment. *In re Morrissey*, 717 F.2d 100 [9 C.B.C.2d 573] (3rd Cir.1983). There the Third Circuit held that the Emergency Rule had to give way in that respect to Rule 8013 of the Rules of Bankruptcy Procedure which were promulgated by the Supreme Court after *Marathon* and found, particularly given the source of the Rule, no unconstitutional diminution of adjunct status. The same reasoning applies to Rule 9015 providing for jury trials. While the Emergency Rule precluded the bankruptcy courts from conducting jury trials, the *White Motor* and *Kaiser* courts did not rely on that preclusion as an element of district court control. If the bankruptcy court can enter a judgment or final order in a core proceeding, there is no constitutional objection to its use of a jury trial in reaching its decision. *Matter of Paula Saker & Co., Inc.*, 37 B.R. 802, 11 B.C.D. 743 (Bankr.S. D.N.Y.1984). Particularly is that so since other Article I courts can constitutionally conduct jury trials. *Pernell v. Southall Realty*, 416 U.S. 363, 370 [94 S.Ct. 1723, 1727, 40 L.Ed.2d 198] (1974); *Capital Traction Co. v. Hof*, 174 U.S. 1, 5 [19 S.Ct. 580, 582, 43 L.Ed. 873] (1899). Put in place to cure the deficiencies found by Justice Brennan in writing for the *Marathon* plurality, these controls and the vesting of the jurisdiction the district courts enable bankruptcy courts to serve as adjuncts assisting the district courts. The bankruptcy courts are no longer independently created bodies that exercise their own jurisdiction and whose members are appointed through the political process.

This change in status greatly enhances, in light of *Marathon*, the validity of enabling adjunct bankruptcy courts to determine state law causes of action. The controls, particularly control over the reference, are nearly tantamount to retention of justiciability in Article III courts. They cast the bankruptcy court as truly an adjunct, similar to the immemorable use of adjuncts by courts here and in England. McCabe, *The Federal Magistrates Act of 1979*, Harv.J. on Legis, 343, 370 372 (1979). The *Kaiser* court observed as much in holding that the presence of such controls in the Emergency Rule assisted in sustaining its constitutional validity. The *Collins* [v. Foreman, 729 F.2d 108 (2nd Cir.1984)] court is in apparent accord for, like the consent provision of the Magistrates Act, 28 U.S.C. Section 636(c), control over the reference "provides constraint against the wholesale delegation of judicial power to adjuncts of the district court." *Collins*, 729 F.2d at 119.

That Congress has redrawn the bankruptcy courts as adjunct courts subject to considerable control by Article III courts thus speaks strongly in favor of a broad definition of core proceedings. The jurisdiction of Article III courts is hardly emasculated by such a system. *Id.* 46 B.R. 850, 12 C.B.C.2d at 67–69, 12 B.C.D. at 845.

The distinction in the bankruptcy courts' role in *core* versus *non-core* proceedings is the essence of the jurisdictional system designed by Congress in the wake of the *Marathon* decision. *Id.* 46 B.R. 850, 12 C.B.C.2d at 60, 12 B.C.D. 841. Section 157(b)(2) of title 28 provides in pertinent part:

Core proceedings include but are not limited to—

(A) matters concerning the administration of the estate;

. . . .

(C) counterclaims by the estate against persons filing claims against the estate;

. . . .

(E) orders to turn over property of the estate;

. . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. Section 157(b)(2) (1984).

■ Applying these considerations to the instant case, the Court pursuant to 28 U.S.C. Section 157(b)(3) determines that the Trustee's suit against the Commission is a core proceeding under 28 U.S.C. Section 157(b)(2) (1984) over which the Court has jurisdiction. Because the Trustee's suit against the Commission is a core proceeding, the court may enter a final order or judgment. 28 U.S.C. Section 157(b)(1) (1984).

Since the Commission filed a claim in Mr. Wood's Chapter 7 case, the Trustee's suit is clearly a counterclaim under 28 U.S.C. Section 157(b)(2)(C) (1984). In a recent article discussing the 1984 amendments, Professor Daniel R. Cowens, former bankruptcy judge and current Member of the National Bankruptcy Conference stated:

(C) Counterclaims filed by the estate against persons filing claims against the estate;

What is a counterclaim within this provision? In some senses, the word covers an attempt to defeat a claim by matters growing out of the same transaction (recoupment), out of a different transaction (setoff) or an attempt to obtain affirmative relief either as part of the same transaction (compulsory counterclaim) or out of a different transaction (permissive counterclaim). In *Katchen v. Landy*, [382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)] the Supreme Court found jurisdiction to grant affirmative relief on a counterclaim growing out of the same transaction. Subsequent cases below the level of the Supreme Court found no such jurisdiction in a permissive counterclaim.

What could be argued to be a mere semantic difference may be highly significant. The filing of a claim was a form of the concept of jurisdiction by consent. The thought that this was entrapment because it was in some cases at least an inadvertent consent crept into the cases. By expressly stating that filing of a claim has an effect any such subjective questions are eliminated. Any attempt to file a claim and include some express reservation regarding jurisdiction should be unavailing. In other words, the classification as a core matter is not a question of whether there was consent but whether a claim was filed.

Cowans, *The Bankruptcy Court and Its Jurisdiction*, 42 B.R. No. 2 (Nov. 13, 1984 Advance Sheet Yellow Sheets p. 14–15.)

The Trustee's action against the Commission is also a matter "concerning the administration of the estate." 28 U.S.C. Section 157(b)(2)(A) (1984). The Trustee is required pursuant to 11 U.S.C. Section 704(1) (1978) to collect and reduce to money the property of the estate. *See* 11 U.S.C. Section 704(1) (1978). Mr. Wood's interest in the collateral fund is property of the estate under 11 U.S.C. Section 541(a) (1978) since Alabama Code Section 10–8–97 (1975) entitled Mr. Wood to his share of the collateral fund after the payment of partnership debts. *See* Ala.Code Section 10–8–97 (1975). In a similar vein, the Trustee's suit falls under 28 U.S.C. Section 157(b)(2)(O) (1984) since this is a "proceeding affecting the liquidation of the assets of the estate." 28 U.S.C. Section 157(b)(2)(O) (1984).

Lastly, the Court notes that the Trustee's suite is in the nature of a turnover

complaint under 11 U.S.C. Section 542(a) (1978). That section provides:

**Section 542 Turnover of property to the estate**

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. Section 542(a) (1978). The term "entity" includes the Commission which is a governmental unit. *See* 11 U.S.C. Section 101(14) (1978). Further, Mr. Willett's testimony clearly shows that the Commission does in fact "control" the collateral fund.[10] The fund worth approximately $12,500.00 is not of inconsequential value or benefit to the estate. Orders to turn over property of the estate are core proceedings. 28 U.S.C. Section 157(b)(2)(E) (1984).

The Court may, therefore, enter a final order or judgment with respect to the Trustee's suit against the Commission. Also with respect to the Trustee's suit against the Commission, this memorandum shall constitute the findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

■ Pursuant to 28 U.S.C. Section 157(b)(3) (1984), the Court determines that the Intervenors' claims against the Commission do not constitute a core proceeding under 28 U.S.C. Section 157(b)(2) (1984). Because the claims of the Intervenors are so entertwined with those of the Trustee and because the Intervenors propose to use the collateral fund, when released, to pay a partnership tax indebtedness, *see* Ala.Code Section 10–8–97 (1975), which is the subject of the Intervenors' adversary proceeding (AP84–0014) against Mr. Wood, the Court concludes that it has jurisdiction over the Intervenors' suit against the Commission under 28 U.S.C. Sections 1334(b) and 157(a) and (c) (1984) as a proceeding that is otherwise related to a case under title 11.

■ The Court further concludes that it has jurisdiction over the Intervenors' claims since they are ancillary to the Trustee's claim against the Commission. Ancillary jurisdiction developed as an equitable doctrine during the nineteenth century. *See Eagerton v. Valuations, Inc.,* 698 F.2d 1115, 1118 (11th Cir.1983) (citing *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861)). Under the doctrine, a federal court, otherwise a court of limited jurisdiction, is empowered to adjudicate ancillary claims involving state law without an independent basis of jurisdiction. Implicit in the doctrine is the idea that a court acquires jurisdiction of a case or controversy in its entirety; and, as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case. *Id. See generally* 1 *Moore's Federal Practice* 0.90[3] (2nd Ed.1985); 2a *Moore's Federal Practice* 8.07[5] (2nd Ed. 1985); Wright, *Law of Federal Courts* Section 9 (3rd Ed.1976).

**10.** The following exchanges took place during Mr. Yearout's examination of Mr. Willett:

Q. [T]he bonds that are on those permits and those pits and that are identified in that Complaint, you have testified, are bonds to secure reclamation, there is a process by which, during the course of mining, that the miners and parties, may petition the Commissioner, to get a release of those bonds, am I correct about that?

A. Yes.

Q. And do you understand that you have the authority to release those bonds; am I correct about that?

A. Yes.

Q. And when those bonds are released by you or by an authority that you have delegated within the Commission to release, then, the bonding company is free from its obligation to the Commission; am I correct about that?

A. That is true.

. . . .

Q. Are you ready to release the bonds?

A. No, I'm not ready to release them.

Q. And you refuse to release the bonds?

A. I do. Whenever the reclamation is made.

One of the original applications of the doctrine of ancillary jurisdiction was in proceedings where non-diverse claimants sought to intervene in federal actions to protect interests in assets within the control of a federal court. *Eagerton,* 698 F.2d at 1118 (citing *Fulton Nat'l Bank v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925); *Stewart v. Dunham,* 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885); *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861)). As the Supreme Court state in *Begg v. City of New York,* 262 U.S. 196, 43 S.Ct. 513, 67 L.Ed.2d 946 (1923):

It is well settled that jurisdiction of a petition in intervention, asserting a claim upon the property or fund being administered by the court, is determined by the jurisdiction originally invoked in the main cause, by virtue of which the intervening petition is entertained.

*Begg v. City of New York,* 262 U.S. 196, 198–99, 43 S.Ct. at 513, 514, 67 L.Ed.2d 946, 948 (1923); *see Warren G. Kleban Engineering Corp. v. Caldwell,* 490 F.2d 800, 802 (5th Cir.1974) (Intervention as of right); *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 715 (5th Cir.1970) (intervention as of right); *Omni Devs., Inc. v. Porter,* 459 F.Supp. 930, 932–33 (S.D.Fla.1978) (discussing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)).

In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court stated:

The general rule is that when a federal court has properly acquired jurisdiction over a cause it may entertain, *by intervention,* dependent or ancillary controversies; but no controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit.

*Id.* at 11–12, 96 S.Ct. at 2419, 49 L.Ed.2d at 285 (emphasis added) (citing *Fulton Nat'l Bank v. Hozier,* 267 U.S. 276, 280, 45 S.Ct.

261, 262, 69 L.Ed.2d 609, 611 (1925)). In *Eagerton v. Valuations, Inc.,* 698 F.2d 1115 (11th Cir.1983), the Eleventh Circuit Court of Appeals espoused the following test for ancillary jurisdiction:

[A]ncillary jurisdiction may only operate when there is a tight nexus with a subject matter properly in federal court. This nexus or logical relationship between the main federal claim and the incidental state claim arises (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant.

*Id.* at 1119 (citations omitted). Applying these conditions to the Intervenors' claims against the Commission, this is a clear case for the application of the doctrine of ancillary jurisdiction.

■ The Court acquired jurisdiction over the fund upon the filing of Mr. Wood's Chapter 7 petition pursuant to 28 U.S.C. Section 1334(d) (1984). Also, the Court clearly has jurisdiction over the Trustee's claim as discussed above. Because of the partnership context of this dispute, the same aggregate of operative facts serves as the basis of both the claims of the Intervenors and of the Trustee. Also because of the partnership context of this dispute, intervention should be allowed "of right" since "the Intervenors claim an interest relating to the property or transaction which is the subject of the action and [they are] so situate that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest as the Intervenors have so pleaded. *See Atlantis Dev. Corp. v. United States,* 379 F.2d 818 (5th Cir.1967).

The Court's conclusion that it has ancillary jurisdiction over the Intervenor's claim against the Commission is further supported by the legislative history of the Bankruptcy Amendments and Federal Judgeship Act of 1984. After expressing doubts about the constitutionality an Arti-

cle I court hearing state law claims, Senator Dole stated:

Ancillary jurisdiction questions are unrelated to this issue. Federal courts certainly retain authority to adjudicate a State claim arising out of the same facts giving rise to the Federal claim.

Bankruptcy Court Reform Conference Report, 98th Cong. 2d Sess. Cong.Rec. Section 8887 (June 29, 1984) (statement of Senator Robert Dole).

Because the Court has determined that it has jurisdiction over the Intervenors' claims under 28 U.S.C. Section 1334(b) (1984), 28 U.S.C. Section 157(a) and (c) (1984), and under the doctrine of ancillary jurisdiction and because the Court determines that the Intervenors' claims are not core proceedings under 28 U.S.C. Section 157(b) (1984), this memorandum shall constitute proposed findings of fact and conclusions of law pursuant to 28 U.S.C. Section 157(c)(1) (1984) with respect to the Intervenors claims.

## II. SOVEREIGN IMMUNITY.

■ The Commission has asserted as a defense that it is immune from suit under the doctrine of sovereign immunity. Section 106 of the Bankruptcy Code provides in pertinent part:

**Section 106 Waiver of sovereign immunity.**

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

. . . .

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. Section 106 (1978). Based upon both sections 106(a) and (b) of the Bankruptcy Code, the Court rejects the Commission's defense.

As noted earlier, the Commission has filed a claim in Mr. Wood's Chapter 7 case. Section 106(a) of the Bankruptcy Code requires that the "claim against such governmental unit ... arose out of the same transaction or occurence out of which such governmental unit's claim arose." The Court finds that this requirement has been met in this case since the fine which is the subject of the Commission's claim was suspended upon the condition that the Coal Companies reclaim the land which is the subject of the Commission's Case No. 82–306. Because the Court has determined that the Trustee's claim is in the nature of a turnover complaint under 11 U.S.C. Section 542(a) (1978), the provisions of 11 U.S.C. Section 106(c) (1978) effectively waive any claim to immunity the Commission might have. *Cf. United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515, 8 C.B.C.2d 710 (1983) (I.R.S. subject to turnover).

The Court is persuaded by the case of *Connecticut Performing Arts Foundation v. Brown*, 47 B.R. 911 (D.Conn.1985). In the *CPAF* case, the CPAF had appealed the revocation of a tax exemption. When the foundation filed for relief under Chapter 11, the appeal was removed to the bankruptcy court. The bankruptcy court rejected the tax commissioner's sovereign immunity defense reversed the revocation of the exemption. Although the district court reversed the bankruptcy court based upon its interpretation of the Connecticut tax law, the district court stated the following in affirming the bankruptcy court's finding of a waiver of sovereign immunity:

In *Parden v. Terminal R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the Supreme Court was confronted with the question of whether the Federal Employee Liability Act (FELA) permitted a

suit against a state in federal court. The Court noted that a state can consent to a suit in federal court and also noted that, in adopting the Constitution, the states "surrender a portion of their sovereignty when they granted Congress the power to regulate commerce." *Id.* at 191, 84 S.Ct. at 1212. The court went on to note that when a state engaged in an activity subject to the commerce power, in that case operating a railroad, it necessarily consented to suits under the FELA. *Id.* at 192, 84 S.Ct. at 1212.

Similarly, the states have granted Congress authority under the bankruptcy clause of the Constitution. When a state engages in an activity that is subject to the bankruptcy power, it is proper for Congress to find that the state has waived its sovereign immunity. Section 106(a) provides that, when a governmental unit has made a claim against the estate, it has waived its immunity with respect to claims against the state that arose out of the same transaction. By making a claim against the estate, the state subjects itself to the bankruptcy power of the United States. The waiver of immunity provided by Section 106(a) is therefore a proper exercise of congressional authority.

*Id.* at 916.

## III. STANDING.

■ The Commission contends that both the Trustee and the Intervenors lack standing to bring these suits since the funds were partnership property. The Court rejects the Commission's standing argument.

The filing of Mr. Wood's Chapter 7 petition had two immediate effects which are pertinent to this discussion. First, the commencement of a case under title 11 created a bankruptcy estate pursuant to 11 U.S.C. Section 541(a) (1978), and Mr. Wood's 12½% interest in the Coal Companies became property of the Estate. 11 U.S.C. Section 541(a) (1978). As noted earlier, the Trustee in a Chapter 7 case has a duty to collect and reduce to money the property of the estate. 11 U.S.C. Section 704(1) (1978). The Trustee, therefore, has

standing. *See* Fed.R.Civ.P. 17(a). Secondly, the filing of Mr. Wood's Chapter 7 petition dissolved the partnerships. *See* Ala. Code Section 10–8–91(5) (1975). Once the partnership was dissolved, the partners were entitled to apply partnership property toward payment of the partnership debts. Ala.Code Section 10–8–97 (1975). Because the collateral fund was partnership property, the Intervenors have standing to seek its release. *See* Fed.R.Civ.P. 17(b).

## IV. POSSESSION OR CONTROL.

The Commission is not in possession of the collateral fund. The fund is in the possession of the corporate sureties in order to secure their obligations under the reclamation bonds. Because the Commission has filed a complaint on the reclamation bonds, however, the Commission does, in fact, control the collateral fund. As Mr. Willett's testimony indicates, *see supra* n. 10 and accompanying text, the Commission has the authority to release the bonds. Mr. Travarthen has testified that the sureties will release the collateral fund when they are discharged from their obligations on the bonds.

## V. MERITS.

■ The complaint upon which the Commission relies in its Case No. 82–306 states on its face that "all operations ceased within the first quarter of 1980 and no further mining activities have occurred since that time." This complaint was filed on March 31, 1982 approximately two years after mining operations had ceased.

Alabama Code Section 9–16–39(g) (1975) provides in pertinent part:

**Section 9–16–39. Maps; reclamation plans.**

. . . .

(g) [That] the applicant shall complete the contouring of all affected land within six months from the date of the completion of operations, unless such regrading is prevented by act of God, such as unseasonable weather or labor disputes or unless otherwise extended by the director for reasonable cause.

Alabama Code Section 9–16–51(a) (1975) provides in pertinent part:

**Section 9–16–51. Complaints of violations; hearings; appeals.**

. . . .

Complaints alleging a violation of the article or rules or regulations of the commission must, as a jurisdictional matter, be filed with the commission within 90 days of the event or events giving the rise to such complaint.

Ala.Code Section 9–16–51(a) (1975).

In the case of *Commercial Standard Ins. Co. v. Alabama Surface Mining Comm'n*, 443 So.2d 1245 (Ala.Civ.App. 1983), cert. denied 443 So.2d 1245 (Ala. 1984), *cert.* denied — U.S. ——, 104 S.Ct. 3514, 82 L.Ed.2d 822 (1984), the Court of Civil Appeals of Alabama ruled that the "event or events" giving rise to a complaint for failure to reclaim surface-mined land was the failure to complete reclamation within six months from the date of the completion of operations.[11] Because the complaint in the *Commercial Standard* case was not within nine months after the completion of operations, the Court of Civil Appeals of Alabama held that the Commission had no jurisdiction to hear the complaint against the miners. The Court further ruled that the surety could assert the defense of lack of jurisdiction.

As the hearing officer recognized in its order of November 14, 1983, the *Commercial Standard* case is directly on point under the facts of the instant case. The Court rejects the Commission's argument that two previously filed complaints distinguish the *Commercial Standard* case from the instant case. Those two complaints which are based upon violations for failure to post signs and markers and to protect topsoil stockpiles are totally unrelated to the reclamation violations which are the subject matter of Case No. 82–306. Because the complaint upon which the Commission relies was filed more than nine months after the completion of the Coal Companies' operations, and this period was not extended by act of God or by the director, the Commission never obtained jurisdiction to hear the complaint in Case No. 82–306 against the Coal Companies and their sureties. Case No. 82–306 is due to be dismissed; and the sureties are due to be released from their obligations under the reclamation bonds.

## CONCLUSION

In summary, this Court has subject matter jurisdiction over both the claims of the Trustee and of the Intervenors against the Commission. Because the Trustee's cause is a core proceeding under 28 U.S.C. Section 157(b) (1984), the Court may enter a final order. Because the Intervenors' claims are not core proceedings, this memorandum shall be considered proposed findings of fact and conclusions of law which shall be submitted to the United States District Court, Northern District of Alabama. The Commission's defense of sovereign immunity is deemed to be waived. Both the Intervenors and the Trustee have standing to bring these claims. Because the Commission lacks jurisdiction over the complaint against the Coal Companies and their sureties, Case No. 82–306 is due to be dismissed; and the sureties are due to be released from their obligations under the reclamation bonds.

## DECLARATORY JUDGMENT

In conformance with the accompanying Memorandum of Decision, it is, by the Court,

**ORDERED, ADJUDGED AND DECREED:**

(1) That the Alabama Surface Mining Commission did not and does not have subject matter jurisdiction over the complaint before the Alabama Surface Mining Commission against The Alaco Group, The Alaco Company and Alacoal Companies, Inc., Docket No. 82–306.

(2) That the said complaint is dismissed.

---

**11.** This six month period may be extended by act of God or by the director of the Commission for cause. *See* Ala.Code Section 9–16–39(g) (1975).

(3) That the sureties Morrison Assurance Company and Northwestern National Insurance Company, on the reclamation bonds of the said coal companies are released from all obligations thereunder.

(4) That the sum of $5,000 will be withheld and paid over to the Bankruptcy Court Clerk, Registry Funds, Northern District of Alabama pending the resolution of the Trustee's objection to the $5,000.00 claim of Alabama Surface Mining Commission (Claim # 24).

(5) That after the deduction as provided in Paragraph 4, Milton Garrett, Trustee of Robbie Dale Wood, is entitled to 12.5% of the collateral deposited with the corporate sureties, Morrison Assurance Company and Northwestern National Insurance Company.

(6) That the PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW are submitted to the U.S. District Court as to the 87.5% of the collateral in accordance with 28 U.S.C. Section 157(c)(1).